THE DWELLE-KAISER COMPANY, Plaintiff, *v.* C. H. FRID, Doing Business under the Firm Name and Style of FRID-MCLEOD CONSTRUCTION COMPANY, and Others, Defendants, Impleaded with NATIONAL BANK OF FREDONIA, JAMESTOWN STONE AND MARBLE CORPORATION and Others, Appellants, and GEORGE E. HUDSON, INC., and Others, Respondents.*

Fourth Department, November 11, 1931.

*Modfg. 139 Misc. 83.

*Kenneth W. Glines* [*Arthur B. Towne* of counsel], for the appellant National Bank of Fredonia.

*Joseph F. Rice* [*Ross A. Spoto* of counsel], for the appellants Jamestown Stone and Marble Corporation and Frank A. Humbert, Inc.

*Carlton P. O'Connor*, for the appellant Thomas Daniels.

*Edwin J. Culligan*, for the respondent George E. Hudson, Inc.

*Charles R. Whiting*, for the respondent Buffalo Gravel Corporation.

*Charles S. Desmond*, for the respondents Omar Swenson and others.

*William J. Magavern*, for the respondent H. D. Taylor Company.

TAYLOR, J. In October, 1928, the Department of Mental Hygiene, acting in behalf of the State of New York, entered into a contract with the Frid-McLeod Construction Company, as general contractor, for the construction of a nurses' home building for the Buffalo State Hospital for the sum of $112,930. The full contract price was paid to the contractor less the sum of $29,765.12, which has been retained by the State and is available for payment of

liens and claims for labor and materials furnished as ordered by the court in this action to foreclose mechanics' liens.

Pursuant to certain withdrawals of appeals and agreements and stipulations, the interests of certain of the parties to the action have been determined. But mooted questions are here on appeal from the judgment of an official referee with reference to several claimed liens.

Section 16 of the Lien Law (added by Laws of 1911, chap. 873, as amd. by Laws of 1929, chap. 515; since amd. by Laws of 1930, chap. 859) provides that no assignment of a contractor's claim against the State shall be valid unless it is filed with the "head of the department or bureau having charge of such construction, and with the * * * officer or person charged with the custody and disbursement of the corporate funds applicable to the contract."

Assignments to the defendant National Bank of Fredonia by the general contractor were filed during November, 1929, and January, 1930, in the office of the State Comptroller, but not elsewhere. The referee correctly held that these assignments were invalid as against claimants having valid liens. (*Albany Builders' Supply Co.* v. *Eastern Bridge & Structural Co.*, 235 N. Y. 432.)

A notice of lien was filed on or about March 28, 1930, by the Jamestown Stone and Marble Corporation with the State Comptroller and with the Department of Mental Hygiene, but not with the Department of Public Works. Section 12 of the Lien Law (added by Laws of 1911, chap. 873, as amd. by Laws of 1929, chap. 515) requires that such a notice of lien shall be filed with "the head of the department or bureau having charge of such construction," and with the State Comptroller. The learned referee held that the Department of Public Works was the "department or bureau" having charge of the construction of the nurses' home building; that filing with the Department of Mental Hygiene was a failure to comply with the statute, and that accordingly this claimant had no lawful lien. In support of this ruling section 48 of the Mental Hygiene Law, section 222 of the State Departments Law (as added by Laws of 1926, chap. 348), sections 9 and 15 of the Public Works Law, and sections 8 and 14 of the Public Buildings Law, with their existent amendments, have been cited by the learned official referee in his opinion (139 Misc. 83).

We do not read section 48 of the Mental Hygiene Law as applying only to plans and specifications for mechanical appliances and fixtures in existing State institutions, and as not relating to plans and specifications for the erection and construction of new buildings. Section 8 of the Public Buildings Law (as amd. by Laws of 1928, chap. 757) does state that the Superintendent of Public Works

shall prepare the drawings and specifications for and supervise the construction of all new buildings erected at the expense of the State, except as otherwise provided by law. However, the Department of Mental Hygiene is the department having jurisdiction over the State hospitals (Mental Hygiene Law, § 11); it signed the contract, and section 48 of the Mental Hygiene Law is the specific statute dealing with the erection of buildings within its jurisdiction. That section provides among other things that all plans and specifications for the erection of buildings for State institutions in the Department of Mental Hygiene shall be prepared by the Department of Public Works; however, it provides that the Commissioner of Mental Hygiene shall adopt or reject any such plans or specifications; that no work shall be begun until the plans and specifications therefor have been adopted; that before the adoption thereof the Commissioner shall submit the same to the board of visitors of such institution, and shall allow such board a period of not more than thirty days in which to submit a statement of their opinions and suggestions in regard thereto; that *contracts for such erection may be let by the Commissioner, subject to the approval of the Comptroller,* for the whole or any part of the work to be performed, and in the discretion of the Commissioner such contracts may be sublet; that special orders for such work in amounts less than $1,000 may be issued by the Department of Public Works upon authorization by the Commissioner ("Commissioner" always meaning the Commissioner of Mental Hygiene, Mental Hygiene Law, § 2, subd. 2); that the Commissioner shall determine to what extent and for what length of time advertisements are to be inserted in newspapers for proposals for the erection of State institutional buildings; that all contracts in an amount greater than $1,000 shall have the performance thereof secured by a bond to be approved and filed with the Commissioner; that the work of erection may be done by the employment of inmates or outside labor, either or both, and by the purchase of materials in the open market whenever in the opinion of the Commissioner and the Superintendent of Public Works such course shall be more advantageous to the State; that the form of the contract or special order shall be prescribed by the Department of Public Works; and that all payments on contracts or special orders shall be made on the certificate of the Department of Public Works approved by the Commissioner as the work progresses or the purchase of materials is made. It is to be observed that practically all of the powers which are specifically conferred upon the Superintendent of Public Works by section 48 of the Mental Hygiene Law can be exercised only by and with the formal consent and approval of the Commissioner of Mental Hygiene. It is further to

be noted that contracts are to be let by the Commissioner of Mental Hygiene subject to the approval of the Comptroller, *but that no approval by the Superintendent of Public Works is required.*

Reading section 8 of the Public Buildings Law and section 48 of the Mental Hygiene Law together, we are of the opinion that filing the notice of lien under discussion in the Department of Mental Hygiene was sufficient under statutory authority. If it be conceded that the bureau or department having charge of this construction is not designated by section 48 of the Mental Hygiene Law with exactness, we are given reason for adherence to our view by the " liberal construction " prescribed by section 23 of the Lien Law (as amd. by Laws of 1929, chap. 515) and by the opinion in *Hawkins* v. *Mapes-Reeve Const. Co.* (178 N. Y. 236). There under a set of facts similar to those here presented the meaning of the sections of the Lien Law relating to filing notices was fully discussed. Among other things the court said: " In determining whether plaintiffs' notice of lien was properly filed, two considerations are to be borne in mind. The first is that the statute (Ch. 703, L. 1894; amended ch. 399, L. 1895) authorizing the addition to Gouverneur Hospital, for which the plaintiffs' labor and materials were furnished, does not clearly designate any board, body or official as having charge of the work and it is, therefore, difficult if not impossible to decide with whom the notice of lien was to be filed; the second is that the Lien Law is to be construed liberally to secure the beneficial interests and purposes thereof, and that a substantial compliance with its terms shall be sufficient for the validity of a lien and to give jurisdiction to the courts to enforce the same. (Sec. 22, ch. 418, L. 1897.) "

The Court of Appeals apparently did not regard the statement in the statute that the work was to be done under the direction and supervision of the Commissioner of Public Works as being of exclusive significance, for it held that filing the notice with the Commissioners of the Sinking Fund, who had such large control of the contract, was a sufficient compliance with the statute. Then, too, in that case the contract was signed by the Commissioner of Public Works, while here it was signed for the State by the Department of Mental Hygiene. Section 16 of the Public Buildings Law (added by Laws of 1914, chap. 111, as amd. by Laws of 1927, chap. 60) requires that all bills for such a construction as the one we are considering must be certified by the Department of Public Works. It is evident that the Comptroller cannot disburse moneys in payments for such bills except upon certificate by both departments mentioned. And since this requires both departments to keep books and other records relating to these matters, we conclude

that under the authority of the *Hawkins* case every reasonable purpose contemplated by the filing statutes would have been served by these claimants if they had filed their notices with the Comptroller and with either the Department of Public Works or the Department of Mental Hygiene.

Claimants Frank A. Humbert, Inc., and Buffalo Gravel Corporation are in the same situation as Jamestown Stone and Marble Corporation. That the Buffalo Gravel Corporation also filed a notice of lien with the Department of Public Works December 16, 1930, which was too late under section 12 of the Lien Law, is of course immaterial.

The notice of lien filed by the H. D. Taylor Company in the Department of Public Works, dated May 15, 1930, fails to state the exact date when the money became due. The contract between this claimant and the contractor was, however, annexed to the lien. The notice states that the amount due is $2,973.86; that nothing is to become due; that the due date is past; that the first item was furnished April 27, 1929, and the last item April 3, 1930. The contract states that payments shall be made on the tenth of each month following delivery, except that the final payment shall be made in thirty days after the lienor shall have completed his work to the full satisfaction of the State Architect. Thus it appears that payment for the materials delivered April 3, 1930, became due on the tenth day of May following. The " final payment " has reference to percentages withheld, the contractor having agreed to pay over on the tenth of each month only such part of the contract price as he had received from the State. The statement in the notice that on the date of its filing the amount due is $2,973.86 and that nothing is to become due permits the inference that the lienor had on the latter date completed his work to the full satisfaction of the State Architect. While the " final payment " may not have been payable until some time between May tenth and May fifteenth, the full amount claimed become due and owing on May tenth and the contract and notice of lien fairly state the fact. (*Bluff Point Stone Co.* v. *U. S. Fidelity & Guaranty Co.*, 180 App. Div. 832.) The claim of the appellant National Bank of Fredonia that the *Bluff Point* case is distinguishable in that there the lienor specifically stated in its notice of lien that it made the contract a part of the notice, whereas in the present case the contract is not stated to be a part of it, is inconsequential (Lien Law, § 23), the contract having been actually annexed and referred to.

This notice of lien is claimed to be further defective in that it fails to give a description of the general contract under which the improvement was carried out. A reading of the notice and

the attached contract makes it clear that everything is set forth which is necessary to answer the statutory requirements. (*Gold-berger-Raabin, Inc.*, v. *74 Second Ave. Corp.*, 252 N. Y. 336.)

The verification of the Thomas Daniels notice of lien was not subscribed and it was correctly held that the lien was defective and invalid. (*Ponsrok* v. *City of Yonkers*, 254 N. Y. 91; *Mozarsky* v. *Whinston Bros., Inc.*, Id. 552.)

Claimant George E. Hudson, Inc., filed two notices of lien, the first March 20, 1930, and the second June 28, 1930. The first notice alone is set up in the defendant's answer and apparently is the only notice relied upon. There being no provision of the Lien Law to the effect that the filing of a second notice operates to discharge or invalidate the first, this lienor is within its rights in treating the second notice of lien as surplusage. (Lien Law, § 21, added by Laws of 1911, chap. 873, as amd. by Laws of 1929, chap. 515; since amd. by Laws of 1930, chap. 859; *Berger Mfg. Co.* v. *City of New York*, 206 N. Y. 24, 29.)

The notices are claimed to be defective and invalid for the reasons:

1. That they fail to state the due date of that portion of the claim which became due after the date of the notice;

2. That they failed to describe sufficiently the location of the property;

3. That the lienor failed to appear or answer herein within three months after filing the second lien.

The first objection was correctly overruled on the authority of *New Jersey Terra Cotta Co.* v. *City of New York* (112 Misc. 512).

The second objection is trivial. The Lien Law (§ 12) requires the lienor to give a description of the public improvement. The notice stated that the public improvement consisted of the construction of a nurses' home at State Hospital, city of Buffalo, N. Y.; also that the contract was made by the People of the State of New York acting through the Commissioner of the Department of Mental Hygiene for the construction of a nurses' home at State Hospital, Buffalo, N. Y. This is sufficient (*Davis Lumber Co.* v. *Blanchard*, 175 App. Div. 256, 258). Section 12 requires the lienor to give a description but not the location of the public improvement. The third objection is futile because it is made with reference to the time of filing the second lien, whereas the lienor relies upon its first lien, which was filed March 20, 1930, and duly continued by court order until June 16, 1931. The plaintiff commenced this action and filed its *lis pendens* and the defendant interposed an answer setting up its lien as provided by the Lien Law before the

lien had expired. This is all that is necessary to preserve the lienor's rights. (Lien Law, § 18, added by Laws of 1911, chap. 873, as amd. by Laws of 1929, chap. 515; *Berger Mfg. Co.* v. *City of New York*, 206 N. Y. 24, 32.)

The appellant National Bank of Fredonia challenges the validity of the lien of Swenson Granite Company on the ground that a *lis pendens* was not properly filed, invoking section 18 of the Lien Law. If this claim had any merit, which it has not, it was waived by failure to plead it. (*Romeo* v. *City of Yonkers*, 126 App. Div. 402; affd., 196 N. Y. 546.) Other objections to this lien are without merit.

Amended section 25 of the Lien Law (effective October 1, 1929) provides that no lienor under contracts for public improvements is entitled to priority over any other lienor of the same class by reason of priority in time of filing notice. (See Lien Law, § 25, added by Laws of 1911, chap. 873, as amd. by Laws of 1929, chap. 515; since amd. by Laws of 1930, chap. 859.) All the valid notices of lien under discussion having been filed after October 1, 1929, their owners must participate *pro rata*.

The judgment appealed from should be modified by giving validity to the liens of Jamestown Stone and Marble Corporation and Frank A. Humbert, Inc., and by providing for distribution to valid lienors *pro rata*, and as thus modified affirmed, with costs as follows: To appellants Jamestown Stone and Marble Corporation and Frank A. Humbert, Inc., jointly, payable out of the fund, one trial fee, one item of costs after notice of trial, bill of costs on appeal and several bills of taxable disbursements; to respondents Buffalo Gravel Corporation, H. D. Taylor Co., Omar, Arthur and Guy Swenson and Geo. E. Hudson, Inc., against defendants National Bank of Fredonia and defendant Thomas Daniels, jointly and severally, one bill of costs on appeal to be divided share and share alike, plus individual bills of taxable disbursements.

Certain findings of fact and conclusions of law should be reversed and modified and new findings of fact and conclusions of law made.

All concur. Present — SEARS, P. J., CROUCH, TAYLOR, EDGCOMB and CROSBY, JJ.

Judgment modified on the law in accordance with the opinion, and as modified affirmed, with costs as stated in the opinion. Certain findings of fact and conclusions of law disapproved and reversed and new findings and conclusions made. Appeal dismissed upon stipulation so far as it affects the defendant The Carey Company.