ADIRONDACK CORE AND PLUG COMPANY, Plaintiff, *v.* THE NEW YORK CENTRAL RAILROAD COMPANY, and Others, Defendants.

Supreme Court, Jefferson County, August 22, 1932.

*Morris, Smith & Carnell,* for the plaintiff.

*Murphy, Mawhinney & Young,* for the defendant Massachusetts Bonding and Insurance Company.

*John J. Bennett, Jr., Attorney-General* [*Thomas Burke* of counsel], for the defendant State of New York.

SMITH, E. N., J. The New York Central Railroad Company entered into a contract with the Abbott-Connolly Construction Company, a Massachusetts corporation, pursuant to the terms of which the latter agreed to construct a bridge for the purpose of eliminating the grade crossing of the Natural Bridge-Harrisville highway known as Rock Cut Crossing and the tracks of the New York Central Railroad Company in the town of Diana, county of Lewis, according to certain plans and specifications attached to the contract, furnished by the chief engineer of said railroad company, for a consideration stated in the schedule, a part of the contract, which sets forth fixed prices for certain parts of the work and unit prices for other parts of the work — particularly with respect to excavations. The contract was executed by the Abbott-Connolly Construction Company on the 10th of October, 1929, and by the New York Central Railroad Company on the 4th of October, 1929. The contract was upon the general contract form of the New York Central Railroad Company. The contractor was to furnish, upon the execution and delivery of the contract, a good and sufficient bond of indemnity in an amount equal to the total contract price of the work provided for therein. The work was to be done under the supervision of the chief engineer of the railroad company. There is nothing in the contract which shows any public relationship or public character, excepting one sentence embodied near the end of Article 7 of the contract, as follows: " It is understood the work is to be done in accordance with the order of the Public Service Commission dated October 18, 1928." .

Under date of October 10, 1929, the defendant Abbott-Connolly Construction Company and the defendant Massachusetts Bonding and Insurance Company (hereinafter called " the bonding company ") executed an indemnity bond, as required by the contract, under and pursuant to the terms of which said bonding company, as surety, was held and firmly bound unto the New York Central Railroad Company in the sum of $23,569.35; the condition was that said contractor would faithfully perform the contract entered into with said New York Central Railroad Company. No mention here of any public character of the transaction.

The work was commenced in the latter part of November, 1929. About the 30th of July, 1930, the contractor abandoned the work. The defendant bonding company promptly undertook the perform-

ance of its duty under the indemnity bond and hired the Utica Construction Company to complete the work, which it did about the 18th of October, 1930.

The plaintiff furnished material consisting of lumber to the Abbott-Connolly Construction Company of the agreed value of $3,465.93, of which no part has been paid except the sum of $250, leaving unpaid and due from the Abbott-Connolly Construction Company to the plaintiff the sum of $3,215.93. All of this material consisted of lumber except an item of ten rolls of paper, $30, and an item of window-sash, $7.50, and all of the lumber excepting so much as was used for runways and for scaffolding, amounting to about four per cent of it, was used in making forms into which the concrete (of which, with steel, the bridge was constructed) was poured.

In making these forms the lumber had to be cut according to the requirements of the structure, and nailed and wired. When the concrete work was finished this form lumber, in this condition, having served its necessary purpose in the construction of the bridge, was removed from the bridge and was of such little value that, together with other lumber left there by the Abbott-Connolly Construction Company, it was sold by the Utica Construction Company, for the benefit of the bonding company, for the sum of $400.

While the estimated contract price was as stated in the bond, under the unit price the actual amount of the contract was $22,779.55. Of this sum the following payments were made: to the Abbott-Connolly Construction Company, before its abandonment of the contract, $6,633.53. This left an unpaid balance of $16,146.02, which was the amount due to the contractor upon the completion of the contract.

The record shows that the New York Central Railroad Company received from the Comptroller of the State of New York, in the manner and under conditions which will hereafter be considered, the total amount of the contract price, $22,779.55; of this amount, as above noted, it paid to the Abbott-Connolly Construction Company $6,633.53, and at the time of the completion of the contract had available, coming from the Comptroller's office, the balance of $16,146.02, which, under conditions and circumstances to be considered later, it received; this included the money which was due for the work of the Abbott-Connolly Construction Company up to the time of its abandonment of the contract, less liens filed.

Of this amount the defendant bonding company, as surety, received on December 31, 1930, after satisfying all the liens filed excepting that of the plaintiff, and after bonding out the lien of the plaintiff, and after certain proper deductions by the New York

Central Railroad Company, the sum of $15,655.96; it also received from the sale of the refuse lumber $400, making its total receipts $16,055.96; its disbursements on account of the satisfaction of liens and the completion of the contract itself were $16,326.73; it also had certain disbursements of its own by way of counsel fees made necessary by reason of the abandonment of the contract by its principal, in the sum of $235.08. So that it appears that there are no moneys remaining in the hands of the surety upon its completion of the contract, out of which to pay this plaintiff.

The contract here involved was for the purpose of doing the work and furnishing the materials for the elimination of a grade crossing. The work of elimination, undertaken in this case by the New York Central Railroad Company, was, in respect of its fiscal features at least, undertaken under and pursuant to the provisions of the so-called Grade Crossing Elimination Act (Chap. 678 of the Laws of 1928). For the purpose of eliminating grade crossings the people of the state had voted a bond issue of three hundred millions of dollars, and the Grade Crossing Elimination Act was enacted to make effective the purpose of the people in voting this bond issue. The act provides for the filing, on or before the 1st day of October of each year, by the Department of Public Works of the State, by a municipal corporation and by any railroad company, with the Public Service Commission of the State, lists of crossings the elimination of which is suggested for consideration during the ensuing calendar year; the Public Service Commission gives notice to the Department of Public Works, the counties and other municipal corporations in which crossings are located, and to the interested railroad corporations, of a public hearing as to the advisability of the elimination of grade crossings, and after such hearing, and not later than December 1st, the Public Service Commission designates, by order, a program of crossings the elimination of which shall be considered during the ensuing calendar year; this program is filed in the office of the Public Service Commission, with the Governor, with the Chairman of the Finance Committee of the Senate, and with the Ways and Means Committee of the Assembly, and is served upon the Department of Public Works, the Comptroller, the counties and the railroad corporations affected thereby; (no mention of the municipalities affected); the Public Service Commission, after public hearing, determines whether the public welfare requires the elimination of any particular crossing or crossings named in the program; in the event it determines that any particular grade crossing should be eliminated, it files its order in that respect with the Comptroller, the Department of Public Works, the railroad

corporation or corporations and the county or counties affected thereby.

Thereupon "The department of public works *or* the railroad corporation *or* corporations *or* the county *or* counties affected thereby as the commission may direct, shall * * * cause to be prepared plans, specifications and estimates of the cost of such elimination and shall submit them to the commission for its approval." Such plans must show that part of the work which, when completed, shall be maintained by the railroad corporation and that part to be maintained by the State or municipalities interested.

Subdivision 6 of section 2 of the act provides as follows: "After such plans, specifications and estimates have been approved by such commission, the railroad corporation or corporations affected thereby shall perform the work, exclusive of the approaches as shown on such plans, and the department of public works shall perform the work relating to the approaches as shown on such plans, *unless the public service commission shall direct the railroad corporation or corporations or the county or counties to perform the work of constructing such approaches.* If the railroad corporation or corporations shall request that the work which it may be required to perform be performed by the department of public works, the commission may so direct. *All work of construction shall be under the general supervision of the department of public works.*"

Subdivision 8 provides: "Each such railroad corporation, or the one designated by the public service commission if there be two or more such corporations, *or* the department of public works may let the necessary contracts therefor under the direction of and subject to such rules and regulations as may be prescribed by the commission. * * * All proposals of contractors shall be submitted to the commission and if the commission shall determine that the bids are excessive, it shall have the power to require the submission of new proposals."

Whether the contract is awarded by the Department of Public Works or by a railroad corporation, certified copies are to be filed with the Comptroller, the Public Service Commission, the Department of Public Works and the municipal corporation or corporations affected thereby. No contract for the elimination of a crossing may be let either by the Department of Public Works or by a railroad corporation, nor can either begin construction work, until the Public Service Commission so directs.

On the 19th of June, 1930, there was filed a mechanic's lien against the Abbott-Connolly Construction Company contract No. 4882, and between that date and the 21st day of October, 1930, there were

filed, in all, against this contract fourteen mechanics' liens by fourteen separate parties. On the 12th day of July, 1930, the plaintiff Adirondack Core and Plug Company duly filed a mechanic's lien for $3,215.93 on account of the material furnished involved in this action. Exhibit No. 20, which is a list of the liens filed in the office of the Comptroller of the State, shows that said lien filed July 12, 1930, expired October 12, 1930, and that a new lien was filed by the plaintiff on the 18th of October, 1930, for a like amount. It appears from this exhibit that all of these liens were discharged in the month of December, 1930, excepting the lien of this plaintiff; this exhibit shows that this lien of the plaintiff was extended and discharged December 16, 1930, upon the filing of a bond of $4,000, and that a notice of pendency of the instant action and a summons and complaint were filed May 5, 1931.

The bond which was filed for the purpose of bonding out the lien of the Adirondack Core and Plug Company was the bond of the defendant Massachusetts Bonding and Insurance Company, executed by Frank P. Dolan, of Albany, New York, and was executed in pursuance to an order of the County Judge of Abany County, issued upon the petition of one Frank P. Bentz. Frank P. Bentz was an employee in the office of Frank P. Dolan, who was one of the attorneys in fact of said surety company and was empowered to execute any and all bonds or undertakings which the company had authority to execute. Frank P. Bentz, as an individual, had no relationship to the construction contract involved herein; he was simply acting in some capacity on behalf of said defendant bonding company. The order of the county judge directing the discharge of the lien upon the filing of the bond was granted in December, 1930. A notice of application to the county judge of Albany county for approval of the bond and the discharge of the lien, returnable December 16, 1930, was served upon the attorneys for the lienor and is entitled " In the Matter of the application of Frank P. Bentz for an order discharging the lien filed by the Adirondack Core & Plug Company against moneys due and to grow due on a contract made between Abbott-Connolly Construction Company and the New York Central Railroad Company for the elimination of grade crossing, etc., No. 4882." The recital in the bond and in the order refers to the lien filed July 12, 1930, with the State Comptroller of the State of New York, the Superintendent of Public Works of the State of New York, the board of supervisors of the county of Lewis, the treasurer of the county of Lewis, and the New York Central Railroad Company. At that time this lien had expired. Upon receiving the bond and the order discharging the lien, the Comptroller's office made a notation to the

effect that the second lien, filed by the plaintiff October 18, 1930, was " discharged December 16, 1930, bond $4,000.00." Now it is conceded by the defendant bonding company that a mistake was made in the recital of the lien of July 12, 1930, which expired by limitation of time October 12, 1930, and that the intent was to discharge the lien of October 18, 1930. No proceeding has been taken to change the order, *nunc pro tunc.* So far as the record in the Comptroller's office is concerned, this likewise is conceded to have been a mistake, as the clerical force in the Comptroller's office evidently thought that the order of discharge referred to the only lien then outstanding. So that, as a matter of fact, if it is of any importance, the lien of October 18, 1930 (if it be a lien) still remains. As a matter of practical consequence, perhaps this is of little moment, as the plaintiff is entitled to recover the money received by the New York Central Railroad Company upon the filing of the bond and by it turned over to the bonding company as the instrumentality completing the construction contract, and the money would have to be refunded to the Comptroller's office in the absence of a correction of the order discharging the lien of July 12, 1930. There was no such lien then existing. No rights of the plaintiff can possibly be prejudiced in respect of any carelessness on the part of the Massachusetts Bonding and Insurance Company or of the Comptroller's office. It is important, however, in this action, to keep in mind that there here are two undertakings executed by the same surety company; one given for the assurance of the performance of this contract by the Abbott-Connolly Construction Company for the construction of the work; the other, the bond issued for the purpose of bonding out the lien.

It appeared upon the trial of the action that the records in the office of the Department of Public Works of the State contained no mention of the filing of the second lien, and a certificate of diligent search from the Department of Public Works fails to disclose the filing of any such lien. The notice of lien itself is dated the 15th day of October, 1930, and is addressed to the Superintendent of Public Works of the State of New York, to the Comptroller of the State of New York, to the board of supervisors of the county of Lewis, to the treasurer of the county of Lewis, and to the New York Central Railroad Company. It is conceded that this notice was received by each of the several parties to whom it was addressed, excepting the Superintendent of Public Works of the State of New York. It appears that, according to the ordinary routine of the law office of the attorney for the plaintiff, who prepared the lien, copies of the notice were addressed and mailed to all of these parties; and each of the parties, or their offices, received a notice of this lien,

excepting only the Department of Public Works. The question is one of fact as to whether or not this notice of lien actually was received by the Superintendent of Public Works.

On the record of liens as filed in the Comptroller's office this notation appears beside the caption " institution or Department "; " Public Works, Division of Highways, Public Service Case, Contract No. 4882."

Out of this complicated state of facts arise many questions of law:

(1) Setting aside the consideration of all questions involving the validity of the lien itself, has the plaintiff any right of action against the defendant bonding company growing out of its liability under its bond given for assurance of the performance of the contract by the Abbott-Connolly Construction Company?

(2) Did the material furnished by the plaintiff to the Abbott-Connolly Construction Company and used by it in the construction of the forms into which was poured the concrete for this bridge formulate the basis of a lien?

(3) If so, has the plaintiff any lien?

As to the first proposition: The bond given by the defendant Massachusetts Bonding and Insurance Company as security for the faithful performance on the part of the Abbott-Connolly Construction Company of its contract with the New York Central Railroad Company for the construction of the bridge was conditioned upon the performance and observance by the contractor of all the stipulations and agreements contained in the contract. The contract contains no provision for the payment for material or labor, but the contractor agrees to accept as full compensation for material and labor the sum stated in the contract, and the bond required to be given was for the amount of the contract.

Section 31 of the contract provides as follows: " The Contractor shall be held responsible for the prompt payment of  all labor supplies and material furnished for any of the constructions embraced in this contract, whether such work be done directly by him or by any Sub-contractor for him, and in case the Contractor fails to cause to be paid or pay for such labor, supplies or material presently after payment is due, whenever, during the continuance of such failure, the Chief Engineer shall deem any such payment necessary to the timely progress of the work, the Company shall have the right to apply any funds which may be or might become payable to said Contractor to the payment of such liabilities, and the amount of such payments shall be considered and accepted as payment on this contract." This provision imposed no liability upon the New York Central Railroad Company, but it did give to it a power; and that irrespective of any questions of lien. This

imposed no added burden upon the surety; its liability was to the railroad company and was limited to the performance of the contract in the event of any default in respect thereof by the contractor; this was the duty of the surety, and this duty it has performed; all it received from the railroad company in recompense for the performance of this duty was the amount of the contract unpaid to the contractor; this amount it received from the railroad company, and the obligation of the railroad company to it and of it to the railroad company ended.

Under the circumstances of this case, if it had appeared that on account of the work done by its principal, the contractor and by itself, it had received more money than was necessary, and that there was an unexpended balance in its hands, the parties all being before a court of equity, the court would have power to make such disposition of such balance as the equities in the case required; but the difficulty is that it now appears that, whereas the defendant surety company received from the railroad company $15,655.96, and also $400 from the sale of the lumber, in all $16,055.96, it actually paid out for the completion of the work and the satisfaction of outstanding liens the sum of $16,326.73; so that, instead of having any surplus out of the transaction, it actually has a deficit. The consequence is that there is no basis upon which the plaintiff can recover against the surety on account of the contract. (*Johnson Service Co.* v. *Monin, Inc.*, 253 N. Y. 417.)

As to the second proposition: It is the contention of the defendants that the claim of the plaintiff for lumber furnished was not a lienable claim, in that such lumber was not used in and did not become a part of the structure. This raises an interesting question of law which, so far as I have been able to discover, has not yet been determined by any decision in the courts of this State.

The defendant bonding company, a Massachusetts corporation, naturally relies upon the rule of the courts of Massachusetts. It has been there held, in a case involving a road contract, that the items for boards used for concrete forms and for conduits, for netting, cotton line, rules, road scraper, buggies used in transporting help, use of scales and freight money paid, and for coal for steam roller, and for hauling stone from various stone walls in the vicinity of the highway to the crusher, and for hauling cracked stone onto the road from the crusher, do not constitute lienable items. (*Thomas* v. *Commonwealth*, 215 Mass. 369.)

We have not before us the Lien Law of Massachusetts; but, generally speaking, the rules in the State of New York, as to most of the items mentioned, which may be classified as instrumentalities or tools used in the work, are in accord with those of Massachusetts.

Not so, however, in reference to hauling charges, where those charges are an essential part of the cost of the material hauled. (*Olmstead v. Clark*, 228 App. Div. 758.) In this State also a lien was sustained for labor of a carpenter "building the forms for concrete work of the bridge which is the subject of this contract." (*Glens Falls Portland Cement Co.* v. *Van Wirt Construction Co.*, 132 Misc. 95.)

Section 3 of the Lien Law (as amd. by Laws of 1930, chap. 859) provides: "A contractor, subcontractor, laborer or materialman, who performs labor or furnishes materials for the improvement of real property with the consent or at the request of the owner thereof, or of his agent, contractor or subcontractor, shall have a lien for the principal and interest, of the value, or the agreed price, of such labor or materials upon the real property improved or to be improved and upon such improvement, from the time of filing a notice of such lien as prescribed in this chapter." Here there is no real estate to which a lien may attach, but in case of a public improvement the lien is against the funds available. (*Italian M. & M. Co.* v. *City of Niagara Falls*, 131 Misc. 281, 287.)

The material furnished by the plaintiff was, for the most part, used in making concrete forms; some of the material was used for making scaffolds and runways; the evidence is not very definite as to the amount, but about four per cent. was used for these purposes. The whole amount of the lumber furnished was practically used up in this work. When lumber is used in making forms of this type, it is practically worthless after once having been cut up and used for such purposes. The fact is that the major part of the labor involved is in making the forms. It is not a case of concrete molds for the purpose of making tile or brick which go into the structure; these are in the nature of tools and may be taken away. Not so with forms for pouring concrete, where the material is used up and afterwards is practically useless. That this is true in the present case is shown by the fact that after the concrete forms were torn away all the material that was left, including all the lumber on the job, including lumber not furnished by this plaintiff, was sold for the benefit and at the request of the defendant bonding company, for $400. To hold that under circumstances of construction of this type lumber used for the purpose of making forms for pouring concrete, or labor used for such purpose, would not be the subject of a lien simply because the particular material did not remain in the construction, would be, in this age of concrete, to defeat to a large extent the beneficent purpose of the Lien Law. If the material used in making the forms would not be lienable, how would the labor which was expended in the making of these forms

be lienable? In the strictest sense of the term, this material was used in this construction.

Section 23 of the Lien Law (as amd. by Laws of 1929, chap. 515) provides that it shall be liberally construed " to secure the beneficial interests and purposes thereof. A substantial compliance with its several provisions shall be sufficient for the validity of a lien and to give jurisdiction to the courts to enforce the same."

I am satisfied that the whole amount of the claim of the plaintiff, in the sum of $3,215.93, less $37.50, or the sum of $3,178.43, is for lienable material.

It is possible that a distinction could be made in reference to material used for runways, but there is no way of calculating the amount. $250 was paid upon the total bill. The defendant bonding company had all of the proceeds of any remaining material; all of it was used in the construction of this work and was necessarily so used. If the defendant bonding company wished to reduce the amount of the claim, it was under some obligation to show what, if any, part of this material was not used up in the construction of this work; this it has failed to do. There are no equitable considerations which appeal in behalf of the defendant bonding company in this respect.

The tendency of the decisions of the courts of this State, following out the injunction for liberal construction of the Lien Law, is in accord with the views above expressed. (*Post & McCord* v. *City of New York*, 86 Misc. 300; affd., 166 App. Div. 919; *Gates & Co.* v. *Stevens Construction Co.*, 169 id. 221; affd., 220 N. Y. 38; *Schaghticoke Power Co.* v. *Greenwich & Johnsonville R. R. Co.*, 183 id. 306; *Shultz* v. *Quereau Co.*, *Talcott* v. *Quereau Co.*, 210 id. 257; L. R. A., 1915-E at page 986.)

The essence of the matter is clearly stated in the notes in L. R. A. 1915-E, *supra*, as follows: " Materials for temporary purposes, such as, for instance, lumber for concrete forms or false work, may or may not be a part of the contractor's equipment. It is quite possible, and indeed it often occurs, that such materials are so used as to render them valueless for further undertakings, and this would seem to be the only proper test to determine whether the materials are lienable, if the law is to keep step with the progress that has been made in the building methods. Concrete forms are as familiar sights now as were scaffolds for brick and stone work comparatively a few years ago, and false work for iron bridges and the like now appear, whereas bridges were built entirely of wood when the legislatures began to turn to the question of mechanics' liens. * * * The practical question underlying the construction of mechanics' lien statutes is whether the man who owns a building

under construction by a financially or otherwise irresponsible contractor is to pay for materials which are consumed in the work, or whether a materialman who in good faith furnishes such materials on the credit of the owner and in reliance upon the efficacy of the mechanics' lien statute, where possibly he would not have furnished them upon the responsibility of the contractor alone, is to be denied the protection which the law broadly professes to give him, merely because his mind was not trained to indulge in such unsubstantial distinctions as that which constitutes the basis of the decision in *Shultz* v. *Quereau Co.* [*supra*]. Wisconsin appears to have struck the right note in holding that materials are lienable to the extent to which their value is depreciated by use." Lumber used for temporary purposes is lienable to the extent that its value is depreciated by use.

It is further contended by the defendants that, in view of the fact that the contract here was made not with the State or a municipal corporation but with the railroad company, section 5 of the Lien Law (as amd. by Laws of 1929, chap. 515) has no application to this case; that the removing or elimination of a grade crossing is not a public improvement. Section 5 of the Lien Law provides: " Liens under contracts for public improvements. A person performing labor for or furnishing materials to a contractor, his subcontractor or legal representative, for the construction of a public improvement pursuant to a contract by such contractor with the state or a municipal corporation, shall have a lien for the principal and interest of the value or agreed price of such labor or materials upon moneys of the state * * *, to the extent of the amount due or to become due on such contract, upon filing a notice of lien as prescribed in this article, excepting as hereinafter in this article provided."

Section 2 of the Lien Law (as amd. by Laws of 1929, chap. 515) defines the words " public improvement " as follows: " The term ' public improvement,' when used in this chapter, means an improvement upon any real estate belonging to the state or a municipal corporation."

Upon the trial of the action a motion for a nonsuit, on the ground that the work was not a public improvement in the contemplation of the Lien Law, was denied on the ground that the fact that the people of the State had voted for a bond issue of three hundred million dollars to provide funds for the elimination of grade crossings, designed for the protection of the lives and safety of the citizens of the State, and the Grade Crossing Elimination Act, enacted to carry out the will of the people of the State in this respect, constituted a provision for a public improvement, and that the fact that

the railroad company, a public service corporation, participated in the expenditures, or was made use of or might be made use of as an instrumentality for doing the work itself, did not alter the nature and character of the work and change its quality from being a public to a private enterprise.

The elimination of grade crossings is, in its very essence, a public improvement, just as much as the highways themselves constitute a public improvement; crossings are a part of the highways; the fact that the railroads cross the highways and that the Legislature has compelled the railroads to pay a part of the cost of this improvement of the highways does not alter the situation. The railroads are compelled to pay a part of the cost because their invasion of the highways has endangered the safety of the public. As shown by the Grade Crossing Elimination Act itself, the determining factor as to whether a grade crossing should be or should not be eliminated is the public necessity; and that fact is determined by the Public Service Commission. It is unthinkable that the Legislature ever intended that those who furnish materials or labor in the performance of this public work are to be left helpless to protect themselves in case of the irresponsibility of contractors doing the work. If there were any doubt in respect of this matter, the Court of Appeals dissolved it in the case of *Long Island Railroad Company* v. *Department of Labor* (256 N. Y. 498), where it is said: " the work of eliminating railroad crossings at grade from the highways of the State is, doubtless, public work. It is a ' public undertaking in behalf of  *  *  *  the people of this State, *  *  *  in which the railroads are to pay a part of the cost.' *  *  *. ' It is elementary that for the safety and convenience of the public the State, either directly or through its municipalities, may reasonably regulate the construction and use of highways where they cross railroads. The legitimate exertion of police power to that end does not violate the constitutional rights of railroad companies. They may be required at their own expense to construct bridges or viaducts whenever the elimination of grade crossings reasonably may be required, whether constructed before or after the building of the railroads.' *  *  *  The State might, if it saw fit, do the work itself, and when the railroads in obedience to the command of the State, perform the work of changing a highway grade they are in fact performing a function intrusted to them by the State."

It is further contended that the railroad company, in the performance of the work, was acting in its private capacity and was in no wise an agency of the State. The Grade Crossing Elimination Act provides that either the railroad corporation or the Depart-

ment of Public Works may let the necessary contracts for the elimination of grade crossings, under the direction of and subject to the rules and regulations prescribed by the Public Service Commission. The Public Service Commission may direct that the work be done by contract, or by direct employment of labor and purchase of material, or partly by contract and partly by direct employment of labor and purchase of material. All proposals of contracts are to be submitted to the Commission, and the Commission has a right, in case the bids are considered excessive, to demand new proposals. Upon the awarding of any contract by the Department of Public Works or by a railroad corporation, certified copies thereof shall be filed with the Comptroller, the Public Service Commission, the Department of Public Works and the municipal corporation or corporations affected thereby. No contract for the elimination of a grade crossing shall be let by either the Department of Public Works or a railroad corporation, nor shall construction be begun under any such contract, until the Commission directs. Whether the work is done by a railroad corporation or by the Department of Public Works, it is the same work; it may be done by either. Undoubtedly the reason why the work is, under ordinary conditions, done by the railroad corporation is that, through its engineering staff and equipment, its interest in the work itself, in the economies of it and its intimate relationship to it, it is better fitted to do work of this type than is the Department of Public Works.

In the *Long Island Case* (*supra*) the Court of Appeals held that the prevailing rate of wages law was applicable to work of elimination of grade crossings on the ground that it was a public improvement, even though the railroad companies, under the Grade Crossing Elimination Act, participated in the payment of the cost thereof. On the question of agency in this case the court said, after what has already been quoted from this decision heretofore: " Even though all this be true, the railroad companies when acting under the direction of the State are not in true sense its agents. They act under compulsion of the State in the performance of an obligation they owe to the State. Though, to the extent necessary to perform that obligation, they must be entrusted with State powers and functions, yet in all else they are acting for themselves, and not as representatives of the State. Towards third parties they may at times be cloaked by the State with the same immunity which the State would enjoy if the State did the work itself  *  *  * yet their relations  *  *  * are in no wise those of principal and agent. The cost and burden is theirs, and theirs alone, except to the extent that the State chooses to relieve them of that burden.

" The declaration of the Legislature that such work is ' public work for the state and/or for its civil divisions ' cannot alter the facts or enlarge the legislative power. * * * The actual facts that the work is public and performed under the supervision of the State upon highways of the State for the benefit of the people of the State, and in part at the cost of the State, are doubtless sufficient basis for the exercise of the power of the Legislature to regulate the performance of the work in order to promote the public welfare, and even the public convenience, in the use of the highways to which the highways are dedicated."

In the performance of actual construction the whole of the work, from the beginning to the end, is under the supervision of the State. The contract herein provides: " It is understood that the work is to be done in accordance with the order of the Public Service Commission dated October 18, 1928."

While it is true that the State itself assumes no liability under any contract made by the railroad company for the elimination of a grade crossing under the Grade Crossing Elimination Act, so far as the details of the work are concerned and those ordinary matters of contractual liability which arise in the performance of any such contract, and the railroad company in its contracts has made all necessary provisions in that respect, as is customary, and any liability on account of any claim arising out of the violation of such provisions becomes their liability rather than the liability of the State, nevertheless, the whole project being a public improvement, in the actual doing of the work itself, which the State might do, the railroad company, while not in a true sense the agent of the State, in the performance of the work as a whole and in its entirety is an agent and instrumentality of the State. All the money that is expended upon those works and on account of the contracts let by the railroad companies for the performance thereof, both for labor and for material, is paid directly by the State to the railroad companies — the railroads' share, the State's share and the counties' share — the State itself receiving, after the performance of the contract, reimbursement for its advancements from the counties or from the railroad companies. The moneys of the State, raised by the bond issue, constituted the fund for the payment of the cost of this work. A lien is not a lien upon the works but is a lien upon the moneys of the State applicable to the construction of the improvement. While the railroad company, in form, signs the contract and obligates itself to the contractor, in substance, so far as the amount payable upon the contract is concerned, it incurs no liability whatsoever, because the fund is in the hands of the State to pay the cost of this contract, and is payable by the State to the

railroad company upon estimates, and is not paid, in this or in any other instance, until any liens are satisfied. Liens were filed, in the instant case, to the extent of fourteen, just as in any other case of public improvement; and payments were held up in this case until the liens first were satisfied or a bond given to secure payment thereof.

In the present instance the bond given for the purpose of getting the money out of the State, which was held up on account of the lien of the plaintiff herein, was an undertaking to the people of the State of New York. The whole situation — the Grade Crossing Elimination Act, the action of all parties and of the state departments — all tend to these conclusions: (1) that the elimination of grade crossings is a public improvement; (2) that where the work is done through the instrumentality of a railroad corporation the railroad corporation becomes and is an instrument of the State in the construction of a public improvement of this character, and, to that extent at least, is its agent.

This is a public improvement for which the plaintiff in this case has furnished material and for which, under the Lien Law, it has a right of lien as against the fund under the control of the Comptroller as the representative and officer of the State. Certainly there were no funds in the hands of the railroad company against which a lien could be filed: they were in the hands of the State.

This brings us to the final question: Has the plaintiff complied with the Lien Law so as to give it an enforceable lien?

Section 12 of the Lien Law (as amd. by Laws of 1929, chap. 515) provides for the filing of liens on account of public improvements as follows: "At any time before the construction of a public improvement is completed and accepted by the state or by the municipal corporation, and within thirty days after such completion and acceptance, a person performing work for or furnishing materials to a contractor, his sub-contractor, assignee or legal representative, may file a notice of lien *with the head of the department or bureau having charge of such construction and with the comptroller of the state* or with the financial officer of the municipal corporation, *or other officer or person charged with the custody and disbursement of the state or corporate funds applicable to the contract under which the claim is made.*"

In the instant case the contract was made by the New York Central Railroad Company; the New York Central Railroad Company made payments to the contractor as they matured, and, in turn, received reimbursement through the Comptroller's office; upon the completion of the contract it received the total amount

of the contract price, less payments already made, through the Comptroller's office.

The Grade Crossing Elimination Act provides two instrumentalities for the performance of the work of eliminating grade crossings. After the Public Service Commission has determined upon the necessity of the elimination of a grade crossing it serves a copy of its order on the Comptroller, the Department of Public Works, the railroad corporation and the county affected. (Section 2, subdivision 5, Grade Crossing Elimination Act, Chap. 678 of the Laws of 1928.) It then determines that either the Department of Public Works or the railroad corporation, as it directs, shall cause to be prepared plans and specifications and estimates of cost to be submitted to the Commission for its approval. The plans having been approved, the railroad corporation is directed to perform the work, *exclusive of approaches*, and the Department of Public Works is directed to perform the work in reference to approaches, unless the Public Service Commission otherwise directs; and it may direct whether the railroad corporation or the Department of Public Works shall do all of the work, including the crossing and also the approaches. (Section 2, subdivision 6.) The act then provides: "All work of construction shall be under the general supervision of the Department of Public Works."

Subdivision 8 of section 2 provides that the railroad corporation or the Department of Public Works may let the necessary contracts, under the direction of and subject to the rules and regulations prescribed by the Public Service Commission. The Public Service Commission fixes the time for the beginning of the work.

Section 3 of the act (Laws of 1928, chap. 678, as amd. by Laws of 1929, chap. 461) provides that forty-nine per cent of the cost shall be paid by the State, one per cent by the county, and fifty per cent by the railroad corporation.

Any reading of the Act shows clearly that there are two lines of construction procedure; one where the railroad corporation does the work, the other where the Department of Public Works does the work. The clear intent of the Act is, however, that, excepting in exceptional cases, the work is to be done by the railroad corporation.

On or about the 16th of October, 1930, the plaintiff prepared a notice of lien. There is no question as to the form of this lien. The notice of lien is addressed as follows: " To the Superintendent of Public Works of the State of New York, To the Comptroller of the State of New York, To the Board of Supervisors of the County of Lewis, To the Treasurer of the County of Lewis, To the New York Central Railroad Company." There was no question as to

the proper filing of the notice of lien with the Comptroller, the board of supervisors of the county of Lewis, the treasurer of the county of Lewis, and the New York Central Railroad Company; until the commencement of the trial of the action there was no question raised as to the filing of the notice of lien with the Department of Public Works. These notices of lien were prepared by and in the office of the attorneys for the plaintiff, and the notices were transmitted by mail to the various parties to whom they were directed; apparently everyone received the notice, but shortly before the commencement of the trial it was discovered that the notice was not found among the files of the Department of Public Works. There had been a previous lien filed in all these departments and places on the 12th of July, 1930, for this same account; this lien expired by reason of limitation of time, and the new lien of October 18, 1930, was prepared. By reason of this lien the money was withheld by the State until it was bonded out by the defendant bonding company. The mistake in the order fixing the amount of the bond in making reference to the lien of July 12, which at the time had expired, is not material; certainly the defendant bonding company cannot raise any question over that, because it received the money.

The defendant bonding company presents a certificate of diligent search in the office of the Department of Public Works, which fails to discover this notice of lien.

A mere mailing of a notice of lien does not constitute a filing. No evidence has been here presented as to the methods adopted by the office of the Department of Public Works in reference to the filing of liens. A certificate of diligent search by a public office and a failure to find a document is only evidence, not conclusive, and were this a case where the only place of filing was in the office of the Department of Public Works and the only evidence of filing was the mailing, one might be concluded by this certificate, depending entirely, of course, upon the evidence as to the mailing; but it is rather singular that all the other notices were received— and these passed through the same routine; it is rather singular, also, that the answers admitted the proper filing of the notices of lien, the bonding out of the lien, and that all the procedure up to the time of the trial was based upon the proposition that the lien was properly filed. It is the belief of the court that this lien was actually filed with the Department of Public Works.

Assume, however, the fact to be that the notice of lien was not filed with the Department of Public Works  The language of the Lien Law is that the notice of lien should be filed " with the head of the department or bureau *having charge of such construction.*"

The contract was not let by the Department of Public Works; it might have been; under the direction of the Public Service Commission it was let by the railroad corporation. If the contract had been let by the Department of Public Works it certainly would have been in charge of the construction. Likewise, the contract having been let by the railroad corporation under the direct authority of the statute and in pursuance of and compliance with the direction of the Public Service Commission, it is clear that the New York Central Railroad Company had charge of the construction. The word " charge " in the legalistic sense is defined as " a duty or obligation imposed upon some person." (Bouvier's Law Dictionary.) Beyond question, the New York Central Railroad Company had charge of this construction, and there can be no question that, in that respect and to that extent, it was acting as an instrumentality of the State. The mere fact that it had an interest, in that it had to pay one-half of the cost, and was therefore interested in the efficiency and economy of the construction, in no wise alters this relationship. The language of the Grade Crossing Elimination Act to the effect that " all work of construction shall be under the general supervision of the Department of Public Works " in no wise alters this fact. The Department of Public Works had charge in reference to so much of the work as was to be paid for out of highway funds. There were two elements here: one, the overhead crossing itself; the other, the approaches thereto. The part of the work to be performed by the railroad corporation was exclusive of the approaches; the Department of Public Works, under the mandate of the statute, was to perform the work relating to the approaches, unless the Public Service Commission should direct the railroad company or the county to perform the work of constructing such approaches. The contract here involved was for materials to be used in the construction of the crossing proper, as distinguished from the approaches. In this instance the essential parties, the Comptroller and the New York Central Railroad Company, received notice of this lien; the one had charge of the work for the State, and the other had control of the funds for the payment for the work.

Section 23 of the Lien Law provides: " This article is to be construed liberally to secure the beneficial interests and purposes thereof. A substantial compliance with its several provisions shall be sufficient for the validity of a lien and to give jurisdiction to the courts to enforce the same." This is the tendency of the decisions of the courts of this State. (*Hawkins* v. *Mapes-Reeve Construction Co.*, 178 N. Y. 236; *Albany B. S. Co.* v. *Eastern B. & S. Co.*, 235 id. 432; *Italian M. & M. Co., Inc.,* v. *City of*

*Niagara Falls,* 131 Misc. 281; *Fireproof Products Co., Inc.,* v. *County of Nassau,* 138 id. 357; *Dwelle-Kaiser Co.* v. *Frid,* 233 App. Div. 427.)

No questions here are involved as to the priority of rights of several lienors; there are no equitable considerations which appeal. The defendant bonding company satisfied thirteen other liens against this contract, although most of them had expired prior to their discharge; it, through its agents, bonded out the lien of this plaintiff, or intended so to do, and on account of the bond the money due to the plaintiff was paid out; the error that it made in bonding out the expired lien of July twelfth and the error the Comptroller's office made in making a notation of the bonding out of the lien of October eighteenth, under an order that provided for the bonding out of the expired lien of July twelfth, advantages the bonding company not at all; it has the money due to the plaintiff. It is evident, by its having paid all other liens without question, whether they had expired or not, and its recognition in its answer of the validity of this lien, so far as the question of filing is concerned, and by its attempt to bond out this lien and its getting the money from the State which was due on account of this claim by a mistake as to the order and the bond, that the real reason why the defendant bonding company did not satisfy the claim of this plaintiff is that, following the decision in the case of *Thomas* v. *Commonwealth* (215 Mass. 369, *supra*), it was of the opinion that the material used to make forms for concrete work was not the subject of a lien. We have already held that, under the peculiar circumstances of this case, and where a large proportion of the labor is devoted to the making of forms, and where the material in the making of the forms is used up and substantially destroyed, as in this case, both the labor involved and the material used in the construction of the forms are subject to lien. These technical objections, injected into this case during the trial of this action, while seriously urged, were raised in aid of the main objection.

For the foregoing reasons, the plaintiff is entitled to judgment for the amount of its lien, to wit, the sum of $3,178.43, with interest, against the defendant bonding company, and against the defendant Abbott-Connolly Construction Company for the full amount of its claim, with interest, besides the costs of this action.

The plaintiff will prepare findings of fact and conclusions of law in accordance herewith, to be settled upon two days notice if not agreed to.

Judgment accordingly.