UNITED STATES, for Use of BALTIMORE COOPERAGE CO., v. McCAY et al.

District Court, D. Maryland. October 27, 1928.

No. 3106.

Julius H. Wyman, of Baltimore, Md., for plaintiff.

W. Conwell Smith and J. Kemp Bartlett, Jr., both of Baltimore, Md., for defendants.

WILLIAM C. COLEMAN, District Judge. This is an action at law, brought by the United States on behalf of a subcontractor under the Materialmen's Act of August 13, 1894, 28 Stat. 278, as amended by the Act of February 24, 1905, 33 Stat. 811 (40 USCA p. 92, § 270), to recover for labor and materials furnished in connection with work prosecuted for the Ordnance Department, United States Army, at Aberdeen, Md. The question to be determined is the extent of the liability of the contractor and also of the surety on the contractor's bond given pursuant to this statute. The material facts are as follows:

McCay & Kirtland, engineers and contractors, entered into a contract with the Ordnance Department, and gave bond in the penal sum of $4,000, with the United States Fidelity & Guaranty Company as surety, for the faithful performance of the work, and also for making full payments to all persons supplying labor or materials to the contractors, in constructing two 40-foot steel observation towers and in placing shelters thereon, at the government reservation at Aberdeen, Md. On September 30, 1925, these contractors entered into a subcontract with the Baltimore Cooperage Company to furnish labor and materials to erect these two towers, and also to furnish materials for the shelters, knocked down and ready for erection. It was stipulated in the contract that the towers were to be constructed upon the contractor's barge at Stone House Cove, Curtis Bay, Baltimore. However, after partial erection of one of the towers on the barge, it was found impracticable to transport the towers thereon to their permanent location at Aberdeen, on account of shallow water. So construction on the barge was discontinued, and the work carried on where the towers were to be permanently located. This gave rise to controversies over the cost of certain parts of the work. Other items are also in dispute and are hereinafter considered in their turn.

The defense in the present suit is that the subcontract is itself a violation of the terms of the original contract, which prohibits any such subcontract without the written approval of the contracting officer of the United States government, and also that the subcontract violates the original one, in that it does not recite that it relates to the latter, and, further, because it contains no provision that its unperformed portion may be assigned at any time by the contractor to the United States or its nominee.

■ The Materialmen's Act, which controls the present suit, was originally enacted in recognition of the inability of contractors for labor and material on government work to take liens upon property of the United States. It expressly aims to protect those who furnish such labor and materials. The statute must be liberally construed to effectuate its purpose, and mere technical defenses in an action on a bond given under the statute are to be disregarded. U. S. v. Noel Construction Co. (D. C.) 1 F.(2d) 446; Illinois Surety Co. v. John Davis Co. et al., 244 U. S. 376, 37 S. Ct. 614, 61 L. Ed. 1206. In the latter case, an individual contractor sublet part of the work to a corporation without the consent of the United States or its surety. In holding that this transfer did not operate to discharge the surety from past or future liability, since the responsibility of the contractor under the contract and the actual management of the business were not changed, nor the surety prejudiced, the court said (page 380 of 244 U. S. [37 S. Ct. 616]):

"The purpose of the act was to provide security for the payment of all persons who provide labor or material on public work. This was done by giving a claim under the bond in lieu of the lien upon land and buildings customary where property is owned by private persons. Decisions of this court have made it clear that the statute and bonds given under it must be construed liberally, in order to effectuate the purpose of Congress as declared in the act. In every case which has come before this court, where labor and materials were actually furnished for and used in part performance of the work contemplated in the bond, recovery was allowed, if the suit was brought within the period prescribed by the act. Technical rules otherwise protecting sureties from liability have never been applied in proceedings under this statute."

■ The court believes that, on the authority of the above decisions, the defense here raised is too technical to be allowed against

the surety, and, with respect to the contractor, he, having made the subcontract, is estopped, under the given circumstances, to deny its validity.

■ We now turn to the specific items in dispute. There is no controversy over the amount of the original contract price, namely, $1,260. The first disputed item is $58.40 per tower to defray fabricating the material for the shelters or shanties, pursuant to exchange of letters. It is claimed that, since this item was for extra work done by the subcontractor, not called for under the original contract, the subcontractor is not entitled to its payment. This point involves the question of when a surety is discharged by a change in the contract. It is one which has frequently arisen, and it has been repeatedly held that subsequent changes in the contract or specifications originally agreed upon between the contractor and the government, even though made without the knowledge of the surety, will not release the surety from liability to those who supply labor and materials thereunder if the general nature of the work and materials remains the same. U. S. v. National Surety Co. (C. C. A.) 92 F. 549; U. S. v. California Bridge & Construction Co. (C. C.) 152 F. 559.

■ ■ In the present case, the general nature of the work and materials remained the same. It is true that the change increased the cost of the towers by some $116, but this, the court feels, should not be construed as a material change under the circumstances. U. S. v. Fleischmann Construction Co. (D. C.) 298 F. 320; Id. (C. C. A.) 298 F. 330; Id., 270 U. S. 349, 46 S. Ct. 284, 70 L. Ed. 624. There is a further contention made to the effect that this change was without the approval of the government contracting officer as required by the original contract. It was, however, made with the approval of the chief government draftsman at Aberdeen, whom the contracting officer could nominate to act for him, and there is no denial that he was so nominated. So this defense is believed to be too technical and must be rejected pursuant to the principles hereinbefore explained.

■ The next items in dispute, aggregating $218.75, relate to the services of two extra mechanics supplied by the subcontractor, and to adjustment on the work. The subcontractors commenced their work under the contract at Aberdeen on or about November 14th. On November 19th they wrote the contractor that an extra charge of a $1.50 per man per hour, plus transportation and board, would be made covering the time of these two mechanics. There is, however, no evidence of an agreement as to this charge when these men began their work. At that time, no intention to make the charge was communicated to the contractor. There thus being no such agreement at the inception of the work, it is reasonable to assume that the work was to be done under the subcontract as originally drawn. It is true that there was a delay in answering the letter of the subcontractor, setting forth the extra charges, but this appears not to have been deliberate but merely inadvertent. The court finds that the evidence is not sufficient from which to imply an agreement on the part of the contractor to bear this extra cost, nor in fact any agreement to make any allowances to either party not embraced in the original contract between them. Therefore the court will not make any allowance to either party with respect to these items.

■ The next item in dispute is one of $15, covering the value of two hook ladders used by the subcontractor in the work and admittedly not returned. The question here involved is whether these ladders constitute "material," within the meaning of the statute. The statute is not to be strictly limited, like mechanics' lien statutes generally, so as to include only such labor or materials as add to the value of the improvement or structure; nor, on the other hand, should it be so construed as to include claims for labor or materials which are not normally intended for specific use and exhaustion upon the given piece of work, but are merely facilities for doing that work and any other work to which they may be applied by their owner. National Surety Co. v. U. S. (C. C. A.) 228 F. 577, L. R. A. 1917A, 336. Since these ladders appear to fall in the latter class, the claim with respect to them must be disallowed.

■ Next, the contractor claims an allowance of $431.20 for work which he alleges he had to perform in remedying defective work done by the subcontractor. In an action such as this against a contractor and his surety, the contractor, to avail himself of a set-off against a subcontractor, has the burden of proving such damages. U. S. v. Fleischmann Construction Co. (D. C.) 298 F. 320; Id. (C. C. A.) 298 F. 330; Id., 270 U. S. 349, 46 S. Ct. 284, 70 L. Ed. 624. There can be no doubt that, if the subcontractor's work is unduly delayed beyond the specified time, or is defective, and the contractor is damaged thereby, the latter has a right of set-off. In the present case, the contractor undertakes to prove his damage by exhibiting his

own payrolls after the subcontractor's men had terminated their work. Such evidence is too general upon which to predicate the present claim. The payroll includes work done by the contractor outside of his agreement with the subcontractor, and there is no segregation of the parts of the payroll relating to the alleged defective work by the subcontractor on the towers or the shelters. Furthermore, it is significant that the contractor's men did not work full time, due to adverse weather conditions, but there is no allowance for this loss of time. As for the shelters or shanties, the evidence indicates that they were fabricated and delivered according to specifications, except possibly with respect to their being given a coating of green graphite, which matter, however, appears not to have been pressed by the contractor. In short, the evidence taken as a whole does not satisfy the court that the contractor has sustained the burden of proof imposed upon it and consequently this set-off claim must be disallowed.

The next item in dispute is one for $36, included in the contractor's set-off claim for alleged loss of materials in the course of transportation to Aberdeen, after removal from the barge. Since it is clear that the subcontractor had nothing to do with this transportation under its contract, it is not responsible for any loss of materials incident thereto.

We now come to the last item in dispute, namely, the matter of interest. A surety on a contractor's bond for such work as is here involved is not in default until demand for payment is made upon him, and hence until that time is not chargeable with interest. In other words, he is not charged with the duty of ascertaining whether the contractor has been paying for material and labor as furnished, unless and until requested to see to it that such claims are paid. U. S. v. Quinn (C. C. A.) 122 F. 65; London & Lancashire Indemnity Co. of America v. Smoot, 52 App. D. C. 378, 287 F. 952. In the present case, there is no evidence of demand having been made upon the surety before the commencement of this action. Further, since various items herein discussed have been honestly disputed, it is only just and reasonable that interest on the various items as finally liquidated should not antedate the filing of this suit. U. S. v. Fleischmann Construction Co., supra.

The court, therefore, finds for the plaintiff in the sum of $876.80, with interest from December 12, 1925, to date of judgment, against the contractor and surety.