**UNITED STATES, to Use of GALLIHER & HUGUELY, Inc., et al. v. JAMES BAIRD CO. et al.**

**No. 6013.**

United States Court of Appeals for the District of Columbia.

Decided June 25, 1934.

Rehearing Denied Oct. 27, 1934.

H. Winship Wheatley, George E. Hamilton, John J. Hamilton, George E. Hamilton, Jr., Henry R. Gower, James E. Shifflette, and J. A. Marshall, all of Washington, D. C., for appellants.

Leon Tobriner, G. Thomas Dunlop, Edwin A. Swingle, and Walter N. Tobriner, all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, and HITZ, Associate Justices.

HITZ, Associate Justice.

This is an appeal from a judgment of the Supreme Court of the District of Columbia on a verdict for the defendants ordered by the court. The action is based upon a bond executed by the James Baird Company, as principal, and the Fidelity & Casualty Company of New York, as surety, pursuant to the provisions of the Hurd Act, 33 Stat. 811, 40 USCA § 270.

The Baird Company entered into a written contract on January 21, 1929, with the United States for the construction of a building in the city of Washington to be known as the Internal Revenue building. As required by the Hurd Act, the contractor executed a bond to the United States, dated January 23, 1929, upon which the Fidelity & Casualty Company of New York is the surety, one condition of which is the prompt payment of "all persons supplying the principal with labor and materials in the prosecution of the work" provided for in the construction contract.

The contractor made a subcontract with the James H. Elkins Construction Company for the erection of the structural steel used in the building. The plaintiffs and interveners in this action supplied lumber to this subcontractor, the bulk of which was used for decking in connection with erecting the steel, while certain heavier timbers were used to form a base for a derrick.

The subcontractor went into bankruptcy after about 90 per cent. of the steel erection work had been completed, whereupon the decking was seized in July, 1929, by creditors of the subcontractor under an attachment. On March 31, 1931, the plaintiffs brought this action upon the bond executed by the contractor. The court ruled that the lumber in question did not come within the terms of the bond, and directed the jury to return a verdict for the defendants. From a judgment entered on the verdict, this appeal was taken.

So much of the Hurd Act (40 USCA § 270) as is pertinent reads as follows:

"Any person or persons entering into a formal contract with the United States for the construction of any public building, or the prosecution and completion of any public work, or for repairs upon any public building or public work, shall be required, before commencing such work, to execute the usual penal bond, with good and sufficient sureties, with the additional obligation that such contractor or contractors shall promptly make payments to all persons supplying him or them with labor and materials in the prosecution of the work provided for in such contract; and any person, company, or corporation who has furnished labor or materials used in the construction or repair of any public building or public work, and payment for which has not been made, shall have the right to intervene and be made a party to any action instituted by the United States on the bond of the contractor, and to have their rights and claims adjudicated in such action and judgment rendered thereon, subject, however, to the priority of the claim and judgment of the United States. If the full amount of the liability of the surety on said bond is insufficient to pay the full amount of said claims and demands, then, after paying the full amount due the United States, the remainder shall be distributed pro rata among said interveners.

"If no suit should be brought by the United States within six months from the completion and final settlement of said contract, then the person or persons supplying the contractor with labor and materials shall, upon application therefor, and furnishing affidavit to the department under the direction of which said work has been prosecuted that labor or materials for the prosecution of such work has been supplied by him or them, and payment for which has not been made, be furnished with a certified copy of said contract and bond, upon which he or they shall have a right of action, and shall, be, and are hereby, authorized to bring suit in the name of the United States in the district court of the United States in the district in which said contract was to be performed and executed, irrespective of the amount in controversy in such suit, and not elsewhere, for his or their use and benefit, against said contractor and his sureties, and to prosecute the same to final judgment and execution. ᶦ * * ''

The facts with relation to the character of the lumber and the uses to which it was put are set forth in a stipulation filed March 11, 1933:

"All of the lumber furnished by the foregoing parties, except certain heavy timbers hereinafter mentioned, consisted of heavy pine, fir, and spruce planks, generally three inches in thickness by twelve in breadth and of lengths varying from ten to twenty feet. This lumber was used exclusively by the Elkins Construction Company for what is known in the trade as 'decking', in connection with the performance of its contract for erecting the steel on said building, which 'decking' consists in placing temporary flooring over the beams or girders on the floor level where the derrick employed in raising the steel is located and also on the next floor beneath.

"Erecting structural steel in a building of this type cannot be accomplished without such lumber, as its use, as hereinbefore set out, is universally required either by statute or positive rules of interested labor unions, or is dictated by considerations of safety. Its purpose is to afford a landing place for the steel raised by the derrick, as well as protection to workmen who may be employed about the building on levels lower than the story on which the derrick for the time being may be located. This lumber, which for convenience, is referred to as 'decking' was not attached to the building in any way, but was laid across the steel floor beams and was moved from floor to floor as the steel work progressed. The 'decking' was not consumed by the construction work, but, as in the usual course of like operations, some of it became broken by handling and having heavy weights fall upon it, and some of it became dirty and greasy and somewhat burned by hot iron rivets and grease falling upon it and none of the 'decking' could be sold thereafter as new lumber. The Elkins Construction Company had completed the steel work to the top floor of the Internal Revenue Building when it became financially embarrassed. ᵛ * * Thereafter, on July 31, 1929, the Elkins Construction Company was adjudicated a bankrupt, and said lumber so previously seized was sold by the trustee in bankruptcy. * * *

"The purchaser from the trustee in bankruptcy, Koch, was and had been for thirty years in the business of steel erection for buildings and bridges, was in Washington and knew that the James H. Elkins Construction Company was engaged in the erection of the steel on the Internal Revenue Building, which was the same kind of steel erection that he did. * * * About the time Koch started the Commerce Building job he purchased at the site of the Internal Rev-

enue˙Building lumber which had been used by the Elkins Construction Company for 'decking' on that job, he hauled it to the Department of Commerce Building and Garfinckel department store and used it for 'decking' on those buildings.· When. he was through with it ˙on those jobs he shipped it to various other jobs, including the Newark, New Jersey, post-office job, and˙some of it he sold to the Alexander Howie Company, who in December 1932, was still using it˙for skids for landing large stones in Washington. This lumber was used on all of these buildings ´for 'decking.' Koch, in December 1932, still had about 20 percent of this ˙lumber stored, which is still in good condition and sound and safe to use on buildings to walk across and land steel on. The job on the˙Department of Commerce Building ´for which Koch purchased this lumber´ required about the same amount of 'decking' as the Internal Revenue Building. No claim is made for deterioration or partial consumption of ˙this˙ lumber on the Internal Revenue job. Steel erectors in ˙preparing estimates as a basis of bids on this type of work include the ordinary destruction and depreciation of the lumber required for 'decking'."

Neither the Hurd Act nor the bond here given pursuant to its provisions expressly covers labor or material furnished to a subcontractor or to any one other than the principal contractor. It was at first held under the act that the terms of the bond could not be enlarged by implication, and that one who furnished labor or material to a subcontractor had no right of action on the contractor's bond. United States v. Simon ˙(C. C. A.) 98 F. 73; United States v. Farley ·(C. C.) 91 F. 474; Mosier v. Kurchhoff, 51 Misc. 432, 101 N: Y. ¯S. 643;· ˙see United States to Use of Vermont Marble˙Co. v. Burgdorf, 13 App. D. C. 506, at page 520. But it has been established since 1906 that, since the statute should be liberally construed with an eye to its purpose of protecting all who furnish labor or material for use in the construction or repair of government buildings and works, such persons are protected by the bond even· though the labor and materials are supplied· to a subcontractor, and although the bond expressly covers ˙only labor and material furnished to the contractor. United States to Use of Hill v. American Surety Co.; 200 U. S. 197, 26 S. Ct. 168, 50 L. Ed. 437; Mankin v. U. S. to Use of Ludowici-Celadon Co., 215 U. S. 533, 30 S. Ct. 174, 54 L. Ed. 315; Utah Construction Co. v.˙ United States (C. C.. A.) 15 F.(2d) 21; Taylor v. ˙Connett (C. C. A.) 277 F.

945; Smith v. Mosier (C. C.) 169 F. 430; Bartlett & Kling v. Dings (C. C. A.) 249 F. 322; cf. Pavarini & Wyne v. Title Guaranty & S. Co., 36 App. D. C. 348, Ann. Cas. 1912C, 367.

The appellants have based their case here upon the contention that bonds executed under the Hurd Act cover even materials which become part of the permanent equipment of the contractor, usable upon construction projects other than that covered by the bond. And they rely chiefly upon Title Guaranty & Trust Co. v. Crane Co., 219 U. S. 24, 31 ·S. Ct. 140, 55 L. Ed. 72, in which it was held that the bond covered patterns furnished to the˙ molding department of the builder of a steamboat. But nothing in that case indicates that the patterns were usable after the particular job for which they were made was completed, or that they were so used or that they became in any sense permanent equipment of the contractor. See National ·Surety Co. v, United States (C. C. A.) 228 F. 577, at page 582, L. R. A. 1917A, 336. On the contrary, the patterns were probably useless after the casting was completed, and˙ had but small salvage value if any. Cf., Adirondack Core & Plug Co. v. New York Central Railroad Co., 144 Misc. 558, 258 N. Y. S: 916.

Some reliance is also placed upon the companion cases of McPhee v. United States, 64 Colo. 421, 174 P. 808, and Owen v. United States, 65 Colo. 156, 174 P. 816. Here the contract called for the construction of a tunnel as part of the Uncompahgre irrigation project, where a work of great magnitude was performed in a wilderness, and required housing and maintenance for the workmen. It was held that camp equipment, such as kitchen. utensils, furniture, and sleeping quarters were within the statute.

The report of this case does not show that the contractor made any further use of the materials after completion of the work, or that they had any substantial sale value. In default of such a showing the decision is clearly correct. Brogan v. National Surety Co., 246 U. S. 257, 38 S. Ct. 250, 62 L. Ed. 703, L. R. A. 1918D, 776; United States v. W. H.. French Dredging & Wrecking Co. (D. C.) 52 F.(2d) 235; Equitable Casualty & S. Co. v. Helena Wholesale G. Co. (C. C. A.) 60 F.(2d) 380; United States v. Lowrance (C. C: A.) 252 F. 122.

For it has been frequently decided that materials furnished to a contractor which become part of his permanent equipment and may be used under other contracts than that

covered by the bond are not within its coverage. American Surety Co. v. Lawrenceville Cement Co. (C. C.) 110 F. 717; National Surety Co. v. United States (C. C. A.) 228 F. 577, L. R. A. 1917A, 336; United States v. Morgan (C. C.) 111 F. 474; United States v. McCay (D. C.) 28 F.(2d) 777; United States v. Jacoby, 5 Pennewill (Del.) 576, 61 A. 871; see United States v. Hercules Co. (D. C.) 52 F.(2d) 451, at pages 453, 454; cf. Maryland Casualty Co. v. Ohio River Gravel Co. (C. C. A.) 20 F.(2d) 514; Id. (C. C. A.) 21 F.(2d) 744. And we see no reason now to depart from this rule.

The appellants do not seriously contend that the decking furnished by them did not constitute permanent equipment of the subcontractor, and such an argument could not well be made in the circumstances. The cases do, indeed, disclose some conflict of method in determining this question. Thus, in National Surety Co. v. United States (C. C. A.) 228 F. 577, L. R. A. 1917A, 336, the court declared that only the inherent nature of the materials in question should be considered, and that the mere fact that they were furnished for a job of such extent and duration that they were totally worn out before its termination, was irrelevant, if by nature they would normally be considered capital equipment.

While more recently, in a case where truck tires were involved, it was held that the length of time they were used on the job and the surrounding circumstances were of the utmost importance, and a claim for tires totally consumed by use over rough terrain in the course of a single contract was held within the coverage of the bond, although it was said that it would not be so had the tires been furnished when the contract was nearly executed and were still of value at its termination. United States v. Ambursen Dam Co. (D. C.) 3 F. Supp. 548. But this somewhat elusive question we need not pursue, since our stipulation of facts shows that a substantial part of the decking was used by the purchaser at the bankrupt sale on several subsequent contracts of similar character and extent, and that 20 per centum of it was still serviceable three years after its purchase. Furthermore, no claim is here made for deterioration or partial consumption of the decking in the construction of the Internal Revenue building.

Whether the heavy timbers furnished for use as a base for the derrick were totally consumed upon the single construction contract, or would normally have been so consumed, does not appear, and consequently they cannot be covered by the bond.

The judgment is affirmed.

Affirmed.