**H. HERFURTH, JR., INC., et al. v. UNITED STATES to Use of SQUIRE, Superintendent of Banks of Ohio.**

No. 6498.

United States Court of Appeals for the District of Columbia.

Decided Aug. 17, 1936.

Edmund D. Campbell and Charles A. Douglas, both of Washington, D. C., for appellants.

Aubrey B. Fennell and Lucius Q. C. Lamar, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

STEPHENS, Associate Justice.

This case is an appeal from a judgment of the Supreme Court of the District of Columbia entered upon a verdict which the court directed in favor of the plaintiff below, whose successor in interest is the appellee here, and against the defendants below, the appellants here. The suit was originally commenced in the name of the United States of America, to the use of G. H. Shartzer, The Union Trust Company of Dayton, Ohio, a body corporate, and I. J. Fulton, Superintendent of Banks, State of Ohio. Before the trial Shartzer and The Union Trust Company were dismissed from the case. After the appeal was perfected, Samuel H. Squire, Superintendent of Banks, State of Ohio, was substituted for I. J. Fulton. The suit was on a Heard Act bond. The only questions in the case raised by the assignment of errors are those as to the admissibility of evidence.

The declaration, as amended, alleged in substance and effect that: On August 19, 1930, H. Herfurth, Jr., Inc. [hereinafter referred to as "Company"], one of the appellants, contracted with the United States to demolish a building located on Square 226 in the District of Columbia, to haul away the débris therefrom, and to furnish all labor and material for such purposes. On August 23, 1930, pursuant to the requirement of the Heard Act (28 Stat. 278, as amended by 33 Stat. 811, as amended by 36 Stat. 1167, § 291 [40 U.S.C.A. § 270]), the Company and the Massachusetts Bonding & Insurance Company [hereinafter referred to as "Bonding Company"], the other appellant, executed a bond to the United States conditioned in the usual terms for the faithful performance of the contract of August 19, 1930, and for the prompt payment of all persons supplying the Company with labor and materials in the prosecution of the work. Thereafter, on a date not made to appear, the Company subcontracted the entire job to Rudolph W. Herfurth,[1] and on March 20, 1931, he in turn subcontracted the steam shovel and truckage work to G. H. Shartzer upon terms of a stipulated sum per cubic yard for all débris shoveled into trucks and removed, and a stipulated sum per hour for use of the steam shovel in breaking up débris. A sum of $1,267.29 due under this contract was left unpaid. Wherefore the plaintiff [appellee] prayed judgment under the bond against the Company and the Bonding Company for the sum mentioned, with interest.

The defendants [appellants] filed two pleas. In the first they denied that the Company had breached the condition of the bond, and that the Company had not paid the sum in question to Shartzer. They alleged that: Shartzer had been fully paid by the Company. They had no knowledge of the contract, or of the promises therein, between Rudolph W. Herfurth and Shartzer, or of the work done thereunder, or of the failure of Rudolph W. Herfurth to pay Shartzer the sum in question. In the second they asserted that: After Shartzer entered into the contract with Rudolph W. Herfurth, Shartzer performed certain work thereunder, the nature and amount of which were to the appellants unknown. Thereafter, on a date not made to appear, the Company took over from Rudolph W. Herfurth the completion of the work of demolishing the building and clearing the square in question, and in connection with the completion of the work by the Company, Shartzer, on April 20, 1931, entered into a contract under seal with the Company and with H. Herfurth Jr., individually, by which the Company and H. Herfurth, Jr., obligated themselves to pay Shartzer for work to be done by him at certain specified rates. As a part of this agreement of April 20, 1931, and in consideration thereof, Shartzer, on April 30, 1931, by agent, executed a written release and receipt for, and acknowledgment of, all moneys due for work theretofore done, or labor theretofore supplied, by Shartzer on Square 226, the said release and receipt being in terms as follows:

"District of Columbia, ss:

"Before me, Alexander H. Galt, a

---

[1] H. Herfurth, Jr., was president of H. Herfurth, Jr., Inc. Rudolph W. Herfurth was his brother, but without interest in the Company.

Notary Public in and for the District of Columbia, personally appeared G. E. Francis, attorney in fact for G. H. Shartzer, who being first duly sworn stated that all moneys now due for labor and trucks on work now being performed by G. H. Shartzer, on Square 226, Washington, D. C., for H. Herfurth, Jr., Inc., have been duly paid in full to date.

"G. H. SHARTZER,
"By G. E. FRANCIS
"*Attorney in fact.*
"Sworn to and subscribed before me this thirtieth day of April, 1931.
"ALEXANDER H. GALT,
"[SEAL.]                *Notary Public.* [2]"

After the execution of the contract of April 20, Shartzer performed substantial work thereunder, and the Company made full payment therefor to Shartzer and performed every act to be done by it. Wherefore the defendants [appellants] prayed judgment in their own favor.

Under these pleadings the case came on for trial in the Supreme Court of the District of Columbia before the court sitting with a jury. For the appellee [3] there was offered and received in evidence the Company's bid for the demolition of the building and the clearing of the square in question, a letter of acceptance of their bid from the Treasury Department, the Heard Act bond, and a certificate of final settlement of the contract between the Company and the Treasury Department. It was then stipulated that the Company had subcontracted the job to Rudolph W. Herfurth, and that he in turn had subcontracted a portion of the work, to wit the steam shovel and truckage work in question, to Shartzer; and the contract between Shartzer and Rudolph W. Herfurth was also put in evidence. Thereafter the appellee by deposition and stipulation proved that: Shartzer performed his work under the contract with Rudolph W. Herfurth, including work done in the week of April 11–17, 1931, inclusive. The amount due him for the work in that week, totaling $1,267.29, had not been paid. Demand had been made therefor against the Company and the Bonding Company.

A part of the appellee's case was proved by the deposition of one G. E. Francis, which, according to the record, was offered and received in evidence. Apparently this deposition was, according to the usual practice, read to the court and jury. In the course of the deposition Francis stated that when Rudolph W. Herfurth "fell down on his payment," a new contract was entered into between Shartzer and the Company and H. Herfurth, Jr., individually, to wit, the contract of April 20, 1931, referred to in the second plea of the appellants. This contract was offered and received in evidence at the taking of the deposition and was thus, as a part of the deposition, received in evidence at the trial. Francis, further stated in the deposition that after the contract of April 20 had been entered into, the work was continued on the same basis as before, and that for all of the work done under that contract, Shartzer had been paid in full. Further, in the course of the deposition, the attention of Francis was called "to what purports to be a copy of a certain estimate set forth on page three, in the second plea of the defendants [appellants], in the words and figures following:" and then there was read into the deposition the words of the instrument printed above as having been set forth in the appellants' second plea. In the deposition Francis then stated, upon further direct examination, that he did not remember this document; but, after his recollection was refreshed by the calling of his attention to its date as April 30, and that of the contract between Shartzer and the Company as April 20, he stated "It runs in my mind that we were to give H. Herfurth, Jr., when the work was completed, to get our final money, we were to give him a release of the truck hauling and that is supposed to be the instrument that we made for that purpose." He further testified that, although he did not recall the signing of this instrument: "Mr. Herfurth [meaning H. Herfurth, Jr.] asked whether all bills were paid or not . . . for our truck hire and shovel hire . . . That was brought up when we [Shartzer and Francis] were asking for the final settlement on the job." Francis testified further: "This was undoubtedly the in-

---

[2] It was made to appear in this second plea that as originally executed this instrument contained in place of the name of H. Herfurth, Jr., Inc., the name H. R. Herfurth, Jr., in the next to the last line thereof, but that this was a typographical error. No question has been raised about this in the case, and throughout this opinion the instrument will be discussed as if originally executed as above printed.

[3] By the appellee is meant, so far as the proceedings below are concerned, his predecessor in interest.

strument that was entered into to guarantee for Herfurth that the bills were paid." And he explained that when he said "the bills were paid," he referred to people hired to do work for Shartzer "on Herfurth's job." On cross-examination Francis identified, as the document he had referred to in direct examination, a paper which was then marked for identification "Defendant's Exhibit A."

There was also introduced in support of the appellee's case the deposition of Shartzer. Therein he testified that he had been paid by the Company for all the work done and material furnished under the new contract of April 20, but that the $1,267.29 owing from Rudolph W. Herfurth had not been paid. Thereupon his attention was called to the instrument marked for identification "Defendant's Exhibit A," and in respect thereof he stated: "I don't have any knowledge of that, no more than I think they told me in Washington, when I was there one time, we would have to furnish a release that all bills were paid. I think Mr. Herfurth, that is the last contractor, Herfurths, that paid us, before he would give us a final, we had to show that all our bills were paid on the whole job, not only on the first job, but on the first contract too, because he lead us on to believe that he was going to pay that."

To meet this case for the appellee, the appellants thereupon called in person as their only witness H. Herfurth, Jr., president of the Company, who testified in substance that: The arrangements made between himself and the Company on the one hand and Shartzer on the other for the completion of the work, after the Company had taken it over from Rudolph W. Herfurth, were first made in a verbal agreement on or about April 18, 1931. He was then asked:

"Q. Were all of the terms of that verbal agreement embodied in a subsequent written agreement of April 20, 1931? A. No.

"Q. Were some of them embodied in a later instrument? A. Yes, sir."

He then identified the agreement of April 20, which had been offered and received in evidence for the appellee, and was then shown the paper dated April 30, 1931, identified as "Defendant's Exhibit A," and the question put:

"Q. I ask you whether these two instruments constitute together the understanding which you had with Mr. Shartzer with respect to his continuing this work? A. Yes, they do."

Thereafter the appellants sought to prove by the witness the terms of the verbal agreement of April 18. To this the appellee objected—upon the ground that the verbal agreement had merged in the written one of April 20—and the court sustained the objection, and exception was noted. Thereupon the appellants:

"proffered that the witness Hugo Herfurth, Jr., if permitted would testify that there was an agreement between H. Herfurth, Jr., Inc. and G. H. Shartzer, entered into on or about the 17th of April, 1931, as a consideration or inducement to the contract later entered into on April 20, 1931, under which agreement Shartzer, in consideration of the alleged contract, agreed to release H. Herfurth, Jr., Inc., from any and all liability which it might have by virtue of its signature on the bond for work theretofore performed by R. W. Herfurth and not paid for."

Upon objection by the appellee, the court excluded the proffered testimony, and exception was noted.

We think this ruling by the court was correct, for the reason that the appellants had just made clear to the court that they were relying upon two instruments which together embodied the terms of the verbal agreement. It is elementary that under these circumstances the terms of the agreement can be shown only by the instruments themselves. 5 Wigmore on Evidence, 2d Ed., §§ 2425–2449; Jones on Evidence, Civil Cases, 3rd Ed. § 434.

The appellants next offered in evidence the paper marked "Defendant's Exhibit A"—the instrument dated April 30, 1931. Upon objection this was excluded and exception duly noted. We think this ruling was erroneous. As above pointed out, the appellee had in the course of presentation of the deposition of Francis, placed before the court and jury not only the contract of April 20, but also the contents of the instrument of April 30. The contract of April 20 the appellee had actually offered in evidence, and it had been received. He had not formally offered in evidence the instrument of April 30, but he had placed a copy of its contents fully before the court and jury. Neither of these instruments was necessary to the appellee's affirmative case. The suit was not for breach of the contract of April 20; that contract concededly had

been fully performed by the appellants; the suit was upon the bond. Apparently the appellee placed these instruments before the court and jury by way of anticipatory rebuttal of the appellants' defense. But he need not have done this. He could have read to the court and jury that portion of the deposition material to his affirmative case, and then reserved the right to read the balance in rebuttal if necessary.[4] And we think that by presenting to the court and jury the contents of the instrument of April 30, the appellee laid down the bars to the introduction of the instrument itself by the appellants. Bogk v. Gassert, 149 U.S. 17, 25, 13 S.Ct. 738, 37 L.Ed. 631; Warren Live Stock Co. v. Farr (C.C.A.) 142 F. 116, 117. It may be that the trial court's exclusion of the instrument of April 30 was upon the theory that it was immaterial to the case of either party. But it was immaterial to the appellants only as construed by the appellee, and as we point out below, we think it ambiguous and therefore subject to explanatory testimony for the appellants, as well as to the anticipatory explanation of the appellee. For a further reason we think this instrument of April 30 should have been admitted in evidence. There was, as above set forth, evidence for the appellants that the oral agreement of April 18 had been embodied not in one instrument but in two. It is well settled that parties may, and they often as a matter of business practice do, express their agreements in more than one writing. Wigmore, *op. cit. supra*, § 2425. Whether they have done this is a question of fact. Preliminarily, of course, that question of fact is for the judge, who may, if unconvinced that there is evidence in the affirmative, exclude a document offered as one of two or more embodying an agreement. We think that in this case there was evidence tending to show that the contract in question was embodied in two documents rather than one. H. Herfurth, Jr., had testified categorically to that effect. We think the court should have admitted the document of April 30, for ultimate submission to the jury under instructions to the effect that if, in their view, credible evidence preponderated in favor of the appellants' assertion that the agreement of April 18 had been embodied in two documents, they should consider both, and if not, then they

should disregard the instrument of April 30. It is suggested that the appellants' second plea operates against the admissibility of the instrument of April 30 because the appellants did not in terms plead an agreement embodied in two instruments. The second plea is not wholly clear, but even if it is to be construed as a declaration upon an agreement embodied in one writing only, we think that again the appellee waived the point by not objecting to the appellants' testimony that the agreement had been embodied in two. We think that for a third reason this instrument was admissible. In the appellants' first plea they had denied that they had breached the condition of the bond, denied that Shartzer had not been paid, and asserted that he had been. The instrument of April 30 was therefore admissible under the meaning attributed to it (the admissibility of evidence concerning which is next to be discussed) by the appellants as an admission of payment.

Immediately upon the exclusion by the court of the instrument of April 30, the appellants:

"proffered questions to the witness Hugo Herfurth, Jr., as to his explanation of the circumstances of the execution of said paper (Defendants' Exhibit A), on the ground that the instrument is in itself ambiguous and requires explanation to explain its terms, and proffered that the witness, if permitted to answer, would testify that the statements that all moneys now due for labor and trucks on work now being performed referred to all moneys now due to Shartzer instead of moneys now due by Shartzer."

The court upon objection of the appellee refused to permit these questions, upon the ground that the instrument was not ambiguous and spoke for itself. Exception was noted. This ruling we think was error. Again the appellee had waived objection to explanation of the instrument by the appellants when in his own case, as above shown, he introduced testimony as to its meaning. He had gone to some lengths to present his own interpretation of the instrument, to make clear that its meaning was not what the appellants now asserted it to be. The appellee cannot be allowed to present the contents of and explain the instrument himself, and the ap-

---

[4] It is, of course, not meant by this to imply that any part of a deposition regarded by a court as competent, and as relevant to any issue in the case, could be withheld by a party from the court and jury.

pellants denied the right to do the same. Bogk v. Gassert, *supra*. Moreover, as elementary as the parole evidence rule itself, is the exception thereto that if an instrument is ambiguous, testimony is admissible to explain its meaning. This instrument was ambiguous. The phrase therein "all moneys now due for labor and trucks" might mean due to Shartzer, or might mean due from him to his laborers. Therefore this offered testimony should have been received and itself submitted to the jury in connection with the instructions above suggested as to the instrument itself. That is to say, the jury should have been instructed, in respect of the offered explanatory testimony, that if they found that the agreement was embodied in both instruments, they should then consider the explanatory testimony of both parties, and attribute to the instrument of April 30 such meaning as it had under the preponderating credible evidence; whereas if they found that it was not embodied in both instruments, they should disregard both the second instrument and all of the testimony explanatory thereof.

■ Appellants next offered in evidence three checks in the following terms:

"H. Herfurth, Jr., Inc.    No. 1061
"General Contractor and Builder
                "Washington, D. C., April 30, 1931.
"Pay to the order of    G. H. Shartzer    $681 68/100
"Six hundred eighty-one .............. 68/100 Dollars
  "In full—Sq. 226——to Apr. 29——31"
"Alexandria National Bank    H. Herfurth, Jr. Inc.
  "Alexandria, Va.    Hugo Herfurth, Jr."
        "H. Herfurth, Jr., Inc.    No. 1063
        "General Contractor and Builder
                "Washington, D. C., May 2, 1931.
"Pay to the order of    G. H. Shartzer    $486 00/100
"Four Hundred eighty-six ·......... 00|/100 Dollars
  "In full to date
"Alexandria National Bank    H. Herfurth, Jr. Inc.
  "Alexandria, Va.    Hugo Herfurth, Jr."
        "H. Herfurth, Jr., Inc.    No. 1067
        "General Contractor and Builder
                "Washington, D. C., May 8, 1931.
"Pay to the order of    G. H. Shartzer    $660.65
"Six Hundred and Sixty .............. 65/100 Dollars
  "Full settlement Sq. 226    Contract
"Alexandria National Bank    H. Herfurth, Jr. Inc.
  "Alexandria, Va.    Hugo Herfurth, Jr."
  Checks were endorsed on reverse side as follows:
  "G. H. Shartzer.
  "G. E. Francis."

It was testified that the checks had been paid in full by the bank on which they were drawn. The court excluded the checks on objection of the appellee, and the appellant then:

"proffered that the witness, Hugo Herfurth, Jr., if permitted to testify, would state that the [first] check was marked 'in full Square 226 to April 29, 1931,' pursuant to understanding and agreement had between Shartzer and himself that it would be received in full of all liability for work theretofore performed either by himself or R. W. Herfurth with respect to Square 226; that it was accepted by Shartzer with that understanding and cashed by him, and that it constitutes a receipt in satisfaction so far as the liability of said defendant is concerned; that at the time the check was given there was some dispute existing between Shartzer and said defendant as to the exact amounts which might be due and as to the conditions under which the work would be continued."

A similar proffer was made for each of the other two checks. The court excluded the proffered testimony upon appellee's objection, and exception was duly noted. We think this ruling was erroneous for the reason that the phrases in the checks "In full—Sq. 226—to Apr. 29–31," "In full to date," and "Full settlement Sq. 226 Contract," made the checks material under the first plea as admissions of payment.

■ The appellants next offered in evidence a receipt in the following terms:

                        "April 25, 1931
  "Received from H. Herfurth, Jr., Two hundred and Fifty-four 65/100 Dollars— In full on contract—from Apr. 18th to 24th, 1931, inclusive.
  "$254.65.
                "G. H. SHARTZER,
                "By ROSS F. KETTERING."

for the purpose of showing by the words "in full on contract April 18th to 24th, 1931, inclusive" that there was an understanding or agreement between the parties on April 18, 1931, two days prior to the execution of the written contract. Upon objection by the appellee this was excluded and exception duly noted for the appellants. We think this ruling was correct for the same reason as was above set forth in support of the ruling excluding the oral agreement itself.

■ The appellants next:
"proffered to show, by said witness [H. Herfurth, Jr.], the existence of an arrangement between Rudolph Herfurth and Shartzer with respect to the payment of said bill [$1267.29] with which Shartzer was satisfied at the time he made the agreement theretofore proffered with respect to H. Herfurth, Jr., Inc., and that between April. 30, and June 5, 1931, his arrangements with Rudolph Herfurth did

not materialize to his satisfaction and that therefore he made this new claim."

This, upon objection by the appellee, was excluded by the court as immaterial, and exception noted for the appellants. We think this ruling of the court was incorrect. The testimony offered was pertinent as bearing upon the probability or improbability of appellants' version of the agreement existing between Shartzer and themselves. That is to say, the existence of an arrangement between Shartzer and Rudolph W. Herfurth, satisfactory to Shartzer, with respect to the payment of the amount in question, would lend credence to the claim of appellants that Shartzer released them. The appellee contends that, assuming that Shartzer did make an arrangement with Rudolph W. Herfurth for payment of the bill in question, this is consistent with Shartzer's claim later made upon the bond. That may be, true, and still the arrangement sought to be shown have a probative value corroborative of the claim that Shartzer had released the appellants.

■ H. Herfurth, Jr., then testified that he had made an analysis of the appellee's bill of particulars for the purpose of "differentiating the labor cost from the use of the equipment cost . . ." The appellants then asked the witness the following question:

"Q. Will you state the result of your analysis in breaking down the labor costs from the other costs with respect to this?" To this question the appellee objected. The court sustained the objection, with exception noted for the appellants. This ruling we think was correct. The theory of the offer apparently was that under the Heard Act bond there was no liability for the items for use of the steam shovel and trucks within the phrase "shall make payment to all persons supplying said Principal with labor and materials in the prosecution of the work provided for in said contract." In support of this theory the appellants cite United States, for Use of Baltimore Cooperage Co. v. McCay (D.C.) 28 F.(2d) 777; National Surety Co. v. United States (C.C.A.) 228 F. 577, L.R.A. 1917A, 336; and United States, to Use of Galliher & Huguely v. James Baird Co., 64 App.D.C. 12, 73 F.(2d) 652. These cases are not in point. They discountenance attempts to recover the value of, as distinguished from a charge for the use of, equipment. Illinois Surety Co. v. John

Davis Co., 244 U.S. 376, 37 S.Ct. 614, 61 L.Ed. 1206, supports recovery on the bond for the items in question.

The foregoing constituted the appellants' case. At its close the court directed a verdict against them. Had the evidence been admitted which was, as we above hold, erroneously excluded, there would have been a case for the jury. Accordingly the judgment of the trial court is

Reversed and the case remanded for further proceedings in accordance with this opinion.