UNITED STATES of America for the USE AND BENEFIT OF J. P. BYRNE & CO., Inc., Plaintiff-Appellee,

v.

FIRE ASSOCIATION OF PHILADELPHIA, Defendant-Appellant.

No. 14, Docket 25025.

United States Court of Appeals Second Circuit.

Argued Oct. 8, 1958.

Decided Oct. 31, 1958.

---

542

Mark N. Turner, of Brown, Kelly, Turner & Symons, Buffalo, N. Y. (Richard Marlink, Philadelphia, Pa., Raymond C. Vaughan and Thomas J. Kelly, Buffalo, N. Y., on the brief), for defendant-appellant.

John J. Costello, of Byrne & Costello, Syracuse, N. Y., for plaintiff-appellee.

Before CLARK, Chief Judge, and MEDINA and LUMBARD, Circuit Judges.

CLARK, Chief Judge.

Fire Association of Philadelphia appeals from a judgment in favor of the use plaintiff, J. P. Byrne & Co., Inc., for $16,372.25 for tires sold by Byrne to Dutcher Construction Corporation, a co-defendant below, between February 26,

1956, and April 11, 1956. Appellant is surety upon a payment bond filed by Dutcher, a prime contractor with the United States, in compliance with the Miller Act, 40 U.S.C. §§ 270a–270d. The action was tried before Judge Brennan in the district court, originally sitting with a jury. But as the trial raised no material issue of fact, upon the motions of both parties for a directed verdict, he discharged the jury and thereafter gave the judgment under appeal, writing a reasoned opinion supporting his result.

The relevant facts are as follows: Dutcher Construction Corporation held a prime contract for excavation work on Grass River Lock, a part of the St. Lawrence Seaway project. Dutcher was engaged in the performance of this contract from April 1955 until April 11, 1956, when, the work still uncompleted, the contract was terminated by agreement of the parties because of Dutcher's financial difficulties. In the performance of this work Dutcher employed numerous heavy earth moving vehicles to transport the excavated material out of the excavation area, and some smaller trucks for over-the-road transportation. The district court found that during the last weeks of this contract and for a short period after its termination some of this equipment was used on other jobs not covered by Fire Association's bond.

The bulk of the sum in dispute here is for the sale of new and recapped tires for the heavy earth movers.[1] A small additional sum, $276.46, relates to new tires for the over-the-road trucks, and will be separately discussed below. Turning now to the major items, it appears that individual tires for the earth moving equipment range in price up to $1,890.32 new, and $864.75 recapped. Conditions at the excavation site subjected these tires to unusual wear, as a substantial portion of the work was in glacial till—an abrasive, heavy gravel substance—and the earth movers were required to climb a steeply inclined road often in poor repair. Moreover, all of the vehicles were operated an average of more than one hundred hours a week even during the winter months of 1955–1956 when frequent sub-zero temperatures worsened the situation. An officer of Dutcher testified that from the inception of the contract the repair and replacement of tires was expected to be a constantly recurring item. Appellant's own experts estimated the average life of the heavy equipment tires under these conditions to be only 1,800 hours.

On this appeal appellant asserts that these tires are additions to Dutcher's capital equipment rather than "materials furnished in the prosecution" of the bonded contract; that even if the tires are held to be materials, not capital equipment, plaintiff must show that they were in fact substantially consumed by the work; and that it is not liable as surety for tires which were diverted by the contractor for use on non-bonded jobs. Although none of these contentions are completely foreclosed by existing case law, in our view they each run counter to the expressed Congressional policy embodied in the Miller Act.

■ As is typically the case in actions under the Miller Act, the surety's liability here depends upon and is to be measured by the provisions of § 2(a) of the Act, 40 U.S.C. § 270b(a). United States, for the Benefit of Sherman, v. Carter, 353 U.S. 210, 216, 77 S.Ct. 793, 1 L. Ed.2d 776. Both the bond and the statute obligate the surety for the payment of persons furnishing "material in the prosecution of the work provided for in [the] contract." The courts have refrained from attempting an all-inclu-

---

1. The numerical components of the judgment are as follows:

| | |
|---|---|
| New tires and tubes for heavy earth moving vehicles | $ 7,917.48 |
| Recapped tires for above | 8,237.80 |
| New highway truck tires | 276.46 |
| Service (liability conceded) | 277.81 |
| | 16,709.55 |
| Unallocated credits | 337.30 |
| | $16,372.25 |

sive definition of material furnished in the prosecution of the work. Massachusetts Bonding & Insurance Co. v. United States, 5 Cir., 88 F.2d 388; United States, to Use of Galliher & Huguely, Inc., v. James Baird Co., 64 App.D.C. 12, 73 F.2d 652; United States, for Use of Baltimore Cooperage Co., v. McCay, D.C.Md., 28 F. 2d 777. We make no attempt to do so here, for the facts and circumstances of each case are the sole determinants of the definition. Any inquiry must begin, however, with the repeatedly noted principle that the Miller Act should be liberally construed to effect Congress' remedial purpose. United States, for the Benefit of Sherman, v. Carter, supra, 353 U.S. 210, 77 S.Ct. 793, 1 L.Ed.2d 776; Clifford F. MacEvoy Co. v. United States, for Use and Benefit of Calvin Tomkins Co., 322 U.S. 102, 64 S.Ct. 890, 88 L.Ed. 1163.[2]

■■ Shaped by this rule, perhaps the most important factor in distinguishing materials from capital equipment has been substantial consumption. A prime inquiry of the early decisions was whether the items involved were "normally intended for specific use and exhaustion upon the given piece of work, [or] are merely facilities for doing that work and any other work to which they may be applied." United States, for Use of Baltimore Cooperage Co., v. McCay, supra, D.C.Md., 28 F.2d 777, 780; United States, to Use of Galliher & Huguely, Inc., v. James Baird Co., supra, 64 App. D.C. 12, 73 F.2d 652. A more recent view, which we here adopt, focuses on the degree of expected consumption of the items on the particular job for which

they were furnished. Massachusetts Bonding & Insurance Co. v. United States, supra, 5 Cir., 88 F.2d 388. See Brogan v. National Surety Co., 246 U.S. 257, 38 S.Ct. 250, 62 L.Ed. 703, reversing National Surety Co. v. United States, for Use of Pittsburgh & Buffalo Co., 6 Cir., 228 F. 577, L.R.A.1917A, 336. Under this standard the tires here involved are clearly materials, not capital equipment. At the time of their delivery, the facts unequivocally show that both the use plaintiff and the construction company reasonably expected them to have been substantially used up in the work under the contract. Although many of these items may not in fact have been consumed prior to the unexpected work stoppage, there is not the slightest taint in this case of an attempt by the contractor, within the constructive knowledge of its suppliers, to build up its permanent capital investment at the surety's expense. Cf. United States v. Hercules Co., D.C.S.D.Miss., 52 F.2d 454.

■ Recognizing that substantial consumption is, as discussed above, a significant factor in the very definition of materials furnished in the prosecution of the bonded work, we see no further merit in appellant's assertion that the surety's liability must be predicated on a showing that the materials supplied were in fact substantially consumed by the work. Appellant's position finds no support in the authorities apart from a single dictum by a district judge. United States, for Benefit and Use of Westinghouse Electric Supply Co., v. Robbins, D.C.Mass., 125 F. Supp. 25. At least as applied to materials purchased to replenish inventory

2. See also Fleisher Engineering & Construction Co. v. United States, for Use and Benefit of Hallenbeck, 311 U.S. 15, 17–18, 61 S.Ct. 81, 85 L.Ed. 12; Standard Accident Ins. Co. v. United States, for Use and Benefit of Powell, 302 U.S. 442, 444, 58 S.Ct. 314, 82 L.Ed. 350; Brogan v. National Surety Co., 246 U.S. 257, 38 S.Ct. 250, 62 L.Ed. 703; Illinois Surety Co. v. John Davis Co., 244 U.S. 376, 37 S.Ct. 614, 61 L.Ed. 1206; United States Fidelity & Guaranty Co. v. United States, for the Benefit of Bartlett, 231 U.S. 237, 34 S.Ct. 88, 58 L.Ed. 200; Title Guaranty & Trust Co. of Scranton, Pa., v. Crane Co., 219 U.S. 24, 31 S.Ct. 140, 55 L.Ed. 72; United States, for Use of Hill, v. American Surety Co. of N. Y., 200 U.S. 197, 26 S.Ct. 168, 50 L.Ed. 437; Commercial Standard Ins. Co. v. United States, for Use of Crane Co., 10 Cir., 213 F.2d 106; Glassell-Taylor Co. v. Magnolia Petroleum Co., 5 Cir., 153 F.2d 527; United States ex rel. Purity Paint Products Corp. v. Aetna Casualty & Surety Co., D.C.Conn., 56 F.Supp. 431.

expended in the performance of the bonded contract, it has been conclusively rejected. Commercial Standard Ins. Co. v. United States, for Use of Crane Co., 10 Cir., 213 F.2d 106; Glassell-Taylor Co. v. Magnolia Petroleum Co., 5 Cir., 153 F.2d 527; Montgomery v. Unity Electric Co., D.C.Puerto Rico, 155 F.Supp. 179; United States, for Use and Benefit of J. A. Edwards & Co., v. Bregman Construction Corp., D.C.E.D.N.Y., 156 F.Supp. 784, 787; United States, for Use of Color Craft Corp., v. Dickstein, D.C.E. D.N.C., 157 F.Supp. 126. Significantly the language of the Miller Act, unlike that of its immediate predecessor the Heard Act, requires only that the materials be *furnished* in the prosecution of the work, not that they be *used* as well. See United States ex rel. Purity Paint Products Corp. v. Aetna Casualty & Surety Co., D.C.Conn., 56 F.Supp. 431. Moreover, a requirement that the materials be actually consumed would in many cases conflict with the express grant in § 2(a), 40 U.S.C. § 270b(a), of an immediate right of action ninety days after the goods were delivered.

The construction sought by appellant creates other difficulties. Thus requiring the supplier to trace specific materials after they have left his control may often place upon him an impossible burden of proof even when the items involved were in fact consumed. Moreover, even if appropriate tracing measures could be devised, the courts, in enforcing one remedial policy, should be hesitant to compel an industry to accept what may be artificial and burdensome accounting practices. But these problems aside, the policy of the Miller Act dictates that an exception ought not to be carved out of the surety's liability for materials not actually consumed. For the statutory bond is of value to materialmen in our credit economy only as its coverage is predictable at the time the contract for the materials is created. Businessmen look to more than the contents of their cash registers in conducting their affairs. If, because the surety's liability is held suspended until the goods are consumed, the bond has little effect on the degree of certainty with which the supplier can expect to receive the purchase price of the materials sold or to be sold under the contract, it little aids the financial position of the persons Congress sought to benefit.

■ These same considerations apply with equal vigor to appellant's final assertion—that its liability on the bond does not extend to materials which the contractor innocently or fraudulently diverts from the bonded work to another project. Accordingly, it would be inconsistent with the preceding discussion to enlarge the holdings of past cases which have relieved the surety of his obligation only in circumstances where the supplier, at the time the materials were furnished, had constructive knowledge of the contractor's intended use of them. St. Paul-Mercury Indemnity Co. v. United States, for Use of Jones, 10 Cir., 238 F.2d 917, 924–925; United States, for Use of Westinghouse Electric Supply Co., v. Fourt, D.C.W.D.Okl., 131 F.Supp. 584, 585, affirmed Fourt v. United States, for Use of Westinghouse Electric Supply Co., 10 Cir., 235 F.2d 433.

Accordingly we affirm recovery for the supplies and service for the earth moving vehicles. But we cannot discover in the record the necessary proof to support recovery for the seven highway truck tires furnished between March 10 and April 6, 1956, in the amount of $276.46. The nature and uses of these trucks were not defined except as they were stated to be "pick-up trucks" used over public highways, but never used to haul materials. Thus their connection with the job remains undefined. The tires here involved were much smaller and cheaper than the others; their life, estimated not in hours, but in miles, was said to be from 5,000 to 8,000 miles by one witness, and from 8,000 to 10,000 by another. Without more we cannot hold these tires to be material furnished in the prosecution of the work, and the sum involved must be deducted from the award. But since this failure of proof may have been inadvertent, due to the comparatively small

amount involved, we authorize the district court, in its discretion upon motion promptly made, to hear further evidence and give further judgment on this limited issue only. The plaintiff will nevertheless recover its appellate costs on this appeal.

The judgment is therefore modified by being reduced by the sum of $276.46; as thus modified, it is affirmed.